In re JOHN F. TAYLOR, Lieutenant Colonel,

U. S. Air Force, Petitioner

12 USCMA 427, 31 CMR 13

No. 15,200-A

June 30, 1961

*Robert N. Katz, Esquire,* argued the cause for Petitioner.
*Colonel Merlin W. Baker* argued the cause for Respondent, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This is a motion by the Government to dismiss for lack of jurisdiction a petition to review an order of The Judge Advocate General of the Air Force which petitioner contends "illegally removed" him from the practice of military law.

For the purpose of determining the jurisdictional issue, we assume the allegations of the petition are true. It appears therefrom that under the provisions of Articles 26 and 27, Uniform Code of Military Justice, 10 USC §§ 826, 827, The Judge Advocate General of the Air Force certified the petitioner as qualified to act as law officer and counsel for general courts-martial. The petitioner performed such duties in "an excellent manner" for several years. However, in August 1958 he had difficulties of a "personal" nature with Lieutenant Colonel J. A. McLaughlin, then Staff Judge Advocate of the Air Division to which petitioner was assigned. These difficulties were occasioned by petitioner's request for the return of articles of personal property borrowed from him by Colonel Mc-Laughlin. As a result, a "personalize[d]" investigation "pertaining to . . . [petitioner's] professional ability" was initiated in October 1958. Major Howard Smart, a nonlawyer who had served at another station with Colonel McLaughlin, was appointed to conduct the investigation.

Petitioner contends he was "compelled to appear and ordered to make a statement" at the investigation. He also maintains he was denied counsel, denied the right to call witnesses in his defense, and denied the right to confront and cross-examine adverse witnesses. Additionally, he alleges the investigator was "not fair" and "not professionally qualified to conduct the investigation," and he was never informed of the findings or the recommendations. In November 1958 at Kadena Air Force Base, Okinawa, The Judge Advocate General of the Air Force conducted a hearing in connection with the matter. At the "start of the hearing" petitioner was told that it would do him "no good to say anything." Although he informed The Judge Advocate General that "none of his witnesses had been called" at the investigation conducted by Major Smart, and that his immediate commander strongly supported him, the petitioner was advised that these circumstances "made no difference whatsoever." The hearing lasted less than five minutes. Either at the end thereof, or shortly thereafter, the petitioner was "denied the right to practice." Actually, although stated as broadly as quoted, the petitioner was not entirely barred from military practice. What apparently happened is that The Judge Advocate General of the Air Force terminated his certification of the petitioner's qualification to serve as law

**428**

officer, trial counsel, or appointed defense counsel in general courts-martial. In other words, the petitioner was "decertified." Decertification has had no effect upon petitioner's right to practice law generally, and it has not prevented his appearance as defense counsel for individual accused. Nor has it prevented his admission to the Bar of the Supreme Court of the United States.

Under the Uniform Code of Military Justice, the law officer, trial counsel, and appointed defense counsel of a general court-martial must be "certified" as qualified for such duty by The Judge Advocate General of the particular armed force of which they are members. Articles 26, 27, supra. However, no standards for certification are prescribed, although the persons who are eligible for certification are designated in the Code. The historical background for the requirement indicates that the matter is normally one within the administrative discretion of The Judge Advocate General.

Former provisions of the Articles of War required the convening authority to designate a law member for a general court-martial. The law member had to be an officer of The Judge Advocate General's Department; if such officer was not available, an officer from some other branch could be selected if considered "specially qualified to perform the duties of law member." Article of War 8, 41 Stat 759, 788. The determination of such special qualification was made by the appointing authority. The Elston Act substituted the judgment of The Judge Advocate General for that of the appointing authority. Article of War 8, as amended by Act of June 24, 1948, c. 625, title II, § 206, 62 Stat 604, 628, 10 USC (1946 ed, Supp II) § 1479; Hearings before House Committee on Armed Services on H. R. 2575 (To Amend the Articles of War), 80th Congress, pages 1918, 1991. The change effected by the Elston Act was carried over into the Uniform Code. The administrative nature of the determination of qualification is further emphasized by the provision that assignments of particular members of The Judge Advocate General's Department were "prescribed by The Judge Advocate General after appropriate consultations with commanders on whose staffs they may serve." Article of War 47(a) ; see Article 6, Uniform Code of Military Justice, 10 USC § 806.

Unquestionably certification is an indication of qualification for some specialty in the practice of military law. It may appropriately be considered desirable and beneficial in such matters as promotion and professional standing as a specialist in military law. However, standing alone, The Judge Advocate General's decision to certify an officer as qualified to serve as law officer or counsel in a general court-martial seems to be no different from his determination that an officer is specially suited for assignment to the procurement, patent, or other special section in his office. In that regard, his decision is like that of the United States Attorney General's assignment of personnel in the Justice Department. Some assistants may be considered specially qualified by training and temperament to administer certain matters; others may be qualified for different matters. Unlike admission to the legal profession, therefore, certification would not appear to be a property right which "may not be revoked, nor . . . renewal be denied without procedural and substantive due process." See Jordan v United Insurance Company of America, 289 F2d 778 (CA DC Cir) (decided March 30, 1961) ; cf. Schware v Board of Bar Examiners, 353 US 232, 1 L ed 2d 796, 77 S Ct 752 (1957). We need not attempt to classify the right. See Cafeteria and Restaurant Workers Union v McElroy, — US —, 6 L ed 2d 1230 (decided June 19, 1961). From any standpoint, the decision to decertify is administrative, not judicial. Administrative action is not subject to review by this Court. See United States v Simpson, 10 USCMA 229, 27 CMR 303. As we pointed out in United States v Powell, 12 USCMA 288, 30 CMR 288, we have "always drawn a sharp line between administrative and judicial action."

Nevertheless, the petitioner main-

**429**

tains we can take jurisdiction and grant such "relief in equity and law" as is necessary to correct injustices in the "public interest" and for the protection "of an officer of this Court." Since The Judge Advocate General's action has concededly not deprived the petitioner of his standing as a member of the legal profession, and has not closed the door to his admission to the Bar of this Court and to the Bar of the Supreme Court of the United States, the petitioner obviously has suffered no injury "as an officer of this Court." As to the public interest, this Court is not a court of original jurisdiction with general, unlimited powers in law and equity. Cf. Jordan v United Insurance Company of America, supra; Bland v Connally, — F2d — (CA DC Cir) (decided June 15, 1961). Under its organic act, the Court has power to review certain courts-martial cases. Article 67, Uniform Code of Military Justice, supra. Undoubtedly, it also has incidental powers, the limits of which, however, we have not attempted to define. See 28 USC § 1651(a); United States v Buck, 9 USCMA 290, 26 CMR 70. The instant petition, however, raises no issue for appellate review of a court-martial proceeding; nor is it concerned with any matter in aid of the Court's jurisdiction over court-martial processes. It shows only an administrative ruling by The Judge Advocate General of the Air Force which is separate and distinct from the proceedings of a court-martial. The petition does not allege any improper interference in a matter referred to the petitioner for judicial attention, nor does it even intimate any attempt to bring in "command control" in any case referred to the petitioner for action. Therefore, as a purely administrative matter, the ruling is not reviewable in this Court. United States v Powell, supra; United States v Varnadore, 9 USCMA 471, 26 CMR 251; United States v Simpson, supra.

The motion is granted, and the petition for review is dismissed.

Judge FERGUSON concurs.