Willie D. McPHAIL, Sergeant, U. S. Air Force, Petitioner,

v.

UNITED STATES, Respondent.

Miscellaneous Docket No. 75–22.

U. S. Court of Military Appeals.

Aug. 27, 1976.

Captain James J. Gonzales argued the cause for the Petitioner. With him on the pleadings were *Colonel Jerry E. Conner, Major Byron D. Baur,* and *Major Bruce R. Houston.*

Major John A. Cutts, III, argued the cause for the Respondent. With him on the pleadings was *Colonel Julius C. Ullerich, Jr.*

## OPINION OF THE COURT

COOK, Judge:

The Government contends that this Court has no authority to relieve the petitioner from the burdens of a conviction by a court-martial which could not, constitutionally, exercise jurisdiction over the offenses with which he was charged.

The charges against the accused were referred to a special court-martial to which Major P. B. Herron, a military judge, had been detailed. So constituted, the court-martial was authorized, in the event of conviction, to impose a punitive discharge. Ar-ticle 19, Uniform Code of Military Justice, 10 U.S.C. § 819. On April 2, 1975, at an Article 39(a) session, Judge Herron considered a defense motion to dismiss the charges on the ground that the alleged misconduct occurred in connection with an application for a loan from a credit union located in the civilian community and under circumstances which did not establish a military connection with the transaction. Among other things, Judge Herron found that while the current membership of the credit union included Air Force personnel on active duty at Charleston Air Force Base, South Carolina, the organization was a "private commercial business" that was not subject to "control [or] supervision" of the base commander, and it lacked "even the customary informal contacts which credit unions serving military installations usually have." Additionally, the judge found that another serviceman, whose signature was allegedly forged by the accused to a document attesting that the accused was "a good risk," was not a victim of the accused's misconduct because the furnishing of such an attestation to an inquiring creditor was prohibited by Air Force Regulation 31–6, Table 1, Rule 15, and Note 4, dated 28 April 1974. The judge further determined that the accused's membership in the military was not the "moving force" in the commission of the offenses. On the findings, Judge Herron granted the motion to dismiss the charges. Thereupon, trial counsel applied to the convening authority to review the ruling under the provisions of Article 62(a), UCMJ, 10 U.S.C. § 862(a).

While the matter was before the convening authority, the petitioner applied to this Court for writ of prohibition to prevent the convening authority from considering Judge Herron's decision. We denied the application. Four days later, the convening authority returned the record of the proceedings and the charges to Judge Herron, noting he had "carefully considered" the respective positions of the Government and the petitioner and that he "disagreed with your ruling." On July 17, 1975, the court-martial was reconvened, with Judge Herron sitting at the accused's request, without

court members. *See* Article 16(2)(C), UCMJ, 10 U.S.C. § 816(2)(C).

Consistent with the construction then accorded Article 62, but which has since been overturned,[1] Judge Herron deemed himself bound to accede to the convening authority's decision. *See* Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 67*f*; *United States v. Frazier,* 21 U.S.C.M.A. 444, 45 C.M.R. 218 (1972); *Lowe v. Laird,* 18 U.S.C.M.A. 131, 39 C.M.R. 131 (1969). As there was ample evidence to support his findings of fact, those findings could not, even under the practice then in effect, be reexamined by the convening authority. *United States v. Boehm,* 17 U.S.C.M.A. 530, 38 C.M.R. 328 (1968). Consequently, the judge could have granted the petitioner a continuance to enable him to petition this Court for relief under *Fleiner v. Koch,* 19 U.S.C.M.A. 630 (1969).[2] In that proceeding, the Court had held that it could intercede in an on-going prosecution to prohibit forcing an accused to stand trial for an offense not triable by court-martial within the limitations on the exercise of military jurisdiction propounded by the United States Supreme Court in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). A petition for grant of review was then pending in this Court in *United States v. Ware,* 1 M.J. 282 (1976), in which the accused was challenging the accession interpretation of Article 62, but it is doubtful that Judge Herron or either counsel was aware of the matter. At any rate, having acceded to the convening authority, Judge Herron proceeded with the trial. He found the accused guilty as charged and sentenced him to restriction to the limits of Charleston Air Force Base for 1 month, and to perform hard labor without confinement for 3 months. The convening authority approved the sentence and ordered it executed.

Proceeding under Article 69, UCMJ, petitioner applied to the Judge Advocate General of the Air Force for relief from his conviction. Although this Court had, more than a month earlier, granted review in the *Ware* case, the Judge Advocate General denied the petitioner's application. The present application was then filed in this Court.

Had the accused petitioned this Court before he was sentenced, he would not now be burdened with a conviction for offenses which concededly were not triable by court-martial. *Fleiner v. Koch, supra.* The Government contends that it is too late for this Court to intercede. The contention has two aspects.

■ First, the Government maintains the present petition cannot be treated as an application for *coram nobis* to open the way to possible retroactive application of our decision in *Ware,* which overturned the accession view of Article 62. *Cf. Del Prado v. United States,* 23 U.S.C.M.A. 132, 48 C.M.R. 748 (1974). Under *coram nobis,* a court can remedy an earlier disposition of a case that is flawed because the court misperceived or improperly assessed a material fact. *Id.* at 133. No such error appears in the Court's denial of the original petition for a writ of prohibition. As *Ware* itself recognizes, a convening authority has the power, under Article 62, to request the trial judge to reconsider a previous ruling dismissing a charge which does not amount to a finding of not guilty. When the original petition was before us, the convening authority still had the right to decide whether to accept Judge Herron's initial ruling as final, or to return it to him for further consideration. The petition, therefore, was premature, and our disposition of it was not predicated upon an error of fact. Consequently, there is no basis for *coram nobis* relief.

The second, and more important, contention of the Government is that this Court's power to act in connection with any court-

---

1. *United States v. Ware,* 24 U.S.C.M.A. 102, 51 C.M.R. 275, 1 M.J. 282 (1976).

2. *See Mangsen v. Snyder,* 1 M.J. 287, 288 (1976); *Priest v. Koch,* 19 U.S.C.M.A. 293, 41 C.M.R. 293 (1970).

martial is limited to the authority granted to it by Article 67 to review only specified cases and to the authority of the All Writs Act, 28 U.S.C. § 1651(a), to issue writs "in aid of its jurisdiction." Supported by citations to many decisions by this Court, the Government argues that the Court possesses only appellate jurisdiction, and its ancillary writ authority is strictly limited to a case already docketed in the Court or which can potentially reach the Court by appeal authorized by Article 67. As the petitioner's case can never reach this Court by way of appeal because it is a special court-martial conviction in which the sentence is not one that subjects the case to review by a Court of Military Review, and, consequentially, by this Court,[3] the Government maintains that the Court has no authority to grant any sort of relief to the petitioner, notwithstanding his conviction is unconstitutional. See Robison v. Abbott, 23 U.S.C. M.A. 219, 49 C.M.R. 8 (1974).

On different occasions and in different contexts, we have commented on our jurisdiction in broader terms than defined by the Government. Previously, in In re Taylor, 12 U.S.C.M.A. 427, 430, 31 C.M.R. 13, 16 (1961), the Court acknowledged that it was not a court "of original jurisdiction with general, unlimited powers in law and equity," and denied relief from a decision by the Judge Advocate General of the Air Force which decertified the petitioner as a trial judge. Significantly, relief was not denied because the case was not within the appellate jurisdiction of the Court, as defined in Article 67, but because the subject matter of the petition was not "in aid of the Court's jurisdiction over court-martial processes." Id. at 430, 31 C.M.R. at 16. In Gale v. United States, 17 U.S.C.M.A. 40, 43, 37 C.M.R. 304, 307 (1967), the Court remarked that its earlier opinion in United States v. Frischholz, 16 U.S.C.M.A. 150, 36

C.M.R. 306 (1966), "unequivocally declared our jurisdiction extended beyond the ordinary appellate review of courts-martial." Without reference to the kinds of courts-martial involved in its appellate jurisdiction, the Court went on to say that, as the supreme civilian court of the military justice system, it could not imagine that it lacked authority to grant "relief on an extraordinary basis, when the circumstances so require." 17 U.S.C.M.A. at 43, 37 C.M.R. at 307. In its next term, the Court again considered the implications of its authority as the supreme court of the military justice system; explicitly, it declared it "is not powerless to accord relief" from egregious error "in any court-martial." United States v. Bevilacqua, 18 U.S.C.M.A. 10, 11–12, 39 C.M.R. 10, 11–12 (1968). The Court postulated that an accused who has been deprived of any fundamental right under the Uniform Code "need not go outside the military justice system to find relief in the civilian courts of the Federal judiciary." Id. at 12, 39 C.M.R. at 12. That postulate was applied in Johnson v. United States, 19 U.S.C.M.A. 407, 42 C.M.R. 9 (1970), when the Court granted relief from an illegal condition imposed upon the petitioner by the Judge Advocate General of the Navy in his grant of a petition for a new trial, filed after this Court had denied review and the sentence had been ordered into execution. See Article 73, UCMJ, 10 U.S.C. § 873.

The perceptions of Gale Bevilacqua and Johnson are not aberrations from the concept of action in "aid" of the Court's jurisdiction as the supreme court of the military courts-martial system. The same view expressed in them of the supervisory function of the highest court of a judicial system was taken by the United States Supreme Court as early as 1869, and was reaffirmed as recently as last June. In Ex parte Brad-

---

**3.** In pertinent part, Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867 provides:

(b) The Court of Military Appeals shall review the record in—

(1) all cases in which the sentence, as affirmed by a Court of Military Review, affects a general or flag officer or extends to death;

(2) all cases reviewed by a Court of Military Review which the Judge Advocate General orders sent to the Court of Military Appeals for review; and

(3) all cases reviewed by a Court of Military Review in which, upon petition of the accused and on good cause shown, the Court of Military Appeals has granted a review.

*ley,* 74 U.S. 7 Wall 364, 19 L.Ed. 214 (1869), the petitioner was disbarred by the Supreme Court of the District of Columbia. He applied directly to the United States Supreme Court for a writ of mandamus, alleging that the court which had disbarred him lacked jurisdiction over the cause. The Supreme Court issued the writ. It acknowledged that the disbarment judgment was not within its appellate jurisdiction, but nonetheless it concluded it had authority to review the judgment in exercise of its authority "in the supervision of the proceedings of inferior courts, in cases in which there is a legal right, without any existing legal remedy." *Id.* at 376. The supervisory function has traditionally been exercised by the Supreme Court "to confine an inferior [Federal] court to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), *reaffirmed* in *Kerr v. United States District Court,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (June 14, 1976). In *United States v. United States District Court,* 334 U.S. 258, 263–64, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948), the Court observed that exercise of the supervisory function is "as important" to the safeguarding of a past exercise of its jurisdiction as it is to preservation of the court's "existing or future appellate jurisdiction."

In providing, for the first time, for review of courts-martial by a civilian tribunal established as part of the military justice system, rather than through collateral proceedings in other Federal civilian courts, Congress limited the appellate jurisdiction of this Court to what can be described as the more serious cases. However, the nature of the Court's role in the military justice system was perceived by the proponents of the Uniform Code and Congress in much larger terms than the relatively small number of cases subject to ordinary appellate review under Article 67. Overton Brooks, Chairman of the subcommittee of the House Committee on Armed Services that conducted public hearings on the bill, specifically noted that "the success or the failure of the whole . . . [Code] is going to lie" with this tribunal. Hearings on H.R.2498, Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess., 1271 (1949) [hereafter cited as 1949 House Hearings]. Professor Edmund M. Morgan, Jr., Chairman of the Department of Defense committee that initially drafted the new Code, represented to Congressman Brooks' subcommittee that the Court was "necessary to insure uniformity of interpretation and administration throughout the armed services." 1949 House Hearings, at 604. Brigadier General Franklin Riter, Commander, Department of Utah, The American Legion, suggested to a subcommittee of the Senate Committee on Armed Services that "creation of this civilian court will largely eliminate . . . collateral attacks upon court-martial judgments" in the Federal civilian courts. Hearings on S. 857 and H.R.4080, Before a Subcomm. of the Senate Comm. on Armed Services, 81st Cong., 1st Sess., 188 (1949). Both the Senate and House reports accompanying the final bill indicated that the Code would provide "for the first time in the history of this Nation, a single law for the administration of military justice in the armed forces," assuring that all persons would be "subject to the same law and will be tried in accordance with the same procedures." S.Rep.No.486, 81st Cong., 1st Sess. 2 (1949); H.Rep.No.491, 81st Cong., 1st Sess. 3 (1949). The reports described this Court as the Court "which finally decides questions of law [and] is the court of last resort for each of the armed forces." House Report No. 491, at 4; Senate Report No. 486, at 2.

The United States Supreme Court has recognized that the military justice system "exists separate and apart" from the Federal civilian system. *Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The Supreme Court has also recognized that, although court-martial cases are not subject to direct review by a Federal civilian court, the legality of a judgment by a military court can collaterally be drawn in issue in an original proceeding in a civilian court.

The Court, however, has cautioned the civilian courts not to take cognizance of a challenge to the validity of a court-martial conviction "unless all available military remedies have been exhausted." *Schlesinger v. Councilman,* 420 U.S. 738, 758, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).[4] In indicating its perception of the military remedies available within the military judiciary, the Court said:[5]

> Congress created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals, consisting of civilian judges "completely removed from all military influence or persuasion, who would gain, over time, through familiarity with military problems."

On an earlier occasion, the Court said: "[T]he court to which Congress has confined primary responsibility for the supervision of military justice in this country and abroad" is this Court of Military Appeals. *Noyd v. Bond,* 395 U.S. 683, 695, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631 (1969). In legislative intention and in judicial contemplation, therefore, this Court has judicial functions distinct from its authority to review for error, under Article 67, the small percentage of the total number of cases that annually are prosecuted under the Uniform Code. *See* Annual Report of the United States Court of Military Appeals and the Judge Advocates General of the Armed Forces and General Counsel of the Department of Transportation, at 10–11, 18–19, 36, 39–40 (1973).

■ Undeniably, this Court is fallible, and its errors, unless self-perceived and acknowledged, can be corrected only in the Federal civilian courts. *See Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *Reid v. Covert,* 354 U.S.

1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). Still, this Court is the supreme court of the military judicial system. To deny that it has authority to relieve a person subject to the Uniform Code of the burdens of a judgment by an inferior court that has acted contrary to constitutional command and decisions of this Court is to destroy the "integrated" nature of the military court system and to defeat the high purpose Congress intended this Court to serve. Reexamining the history and judicial applications of the All Writs Act, we are convinced that our authority to issue an appropriate writ in "aid" of our jurisdiction is not limited to the appellate jurisdiction defined in Article 67. To that extent, our opinion in *United States v. Snyder,* 18 U.S.C.M.A. 480, 40 C.M.R. 192 (1969),[6] was too narrowly focused. As one perceptive student of military law has commented, in *Snyder,* the Court "unnecessarily limited its ability to grant extraordinary relief in numerous situations potentially affecting the constitutional or statutory rights of service personnel" in that it did not take adequate account of "the concept of supervisory writs" that is supportable under the All Writs Act. Wacker, *The "Unreviewable" Court-Martial Conviction; Supervisory Relief Under the All Writs Act from the United States Court of Military Appeals,* 10 Harv.Civ.Rights—Civ.Lib.L. Rev. 33, 56, 92 (1975). Considering a predecessor statute to the All Writs Act, the Supreme Court held that a superior judicial tribunal has authority to require "inferior courts and magistrates to do that justice which they are in duty and by virtue of their office bound to do." *Virginia v. Rives,* 100 U.S. 313, 323, 25 L.Ed. 667 (1879). The exercise of the supervisory authority is especially useful when the matter under review is "outside the jurisdiction of the

4. Our records indicate that in a number of instances applications for relief against court-martial proceedings which were initiated first in United States District Courts were denied or stayed pending resort to this Court for the specified relief. *See United States v. Frischholz,* 16 U.S.C.M.A. 150, 36 C.M.R. 306 (1966); *Del Prado v. United States,* 23 U.S.C.M.A. 132, 48 C.M.R. 748 (1974).

5. 420 U.S. at 758, 95 S.Ct. at 1313 (footnote omitted).

6. Representatives of *Snyder's* progency are: *Hendrix v. Warden,* 23 U.S.C.M.A. 227, 49 C.M.R. 146 (1974); *Evans v. United States,* 23 U.S.C.M.A. 686 (1974); *Anderson v. Hamilton,* 22 U.S.C.M.A. 665 (1973). *Cf. Montgomery v. Rumble,* 23 U.S.C.M.A. 689 (1974).

court or officer to which or to whom the writ is addressed." *Id.* at 323–24.

 Assuredly, there are limits to our authority, even as the highest court in the military justice system. *See Noyd v. Bond, supra,* 395 U.S. at 695 n. 7, 89 S.Ct. 1876. Whatever those limits are, as to matters reasonably comprehended within the provisions of the Uniform Code of Military Justice, we have jurisdiction to require compliance with applicable law from all courts and persons purporting to act under its authority. *See Collier v. United States,* 19 U.S.C.M.A. 511, 42 C.M.R. 113 (1970); *Johnson v. United States, supra.* This is not to say, however, that our extraordinary jurisdiction can be invoked for all of the errors that can be reviewed by way of ordinary appeal under Article 67. *See United States v. Henderson,* 1 M.J. 421 (1976); *Michaud v. United States,* 23 U.S.C.M.A. 684 (1974); *Henderson v. United States,* 23 U.S.C.M.A. 684 (1974); *Horner v. Resor,* 19 U.S.C.M.A. 285, 41 C.M.R. 285 (1970). Here, the findings of fact by the trial judge establish that the offenses of which the accused stands convicted cannot, constitutionally, be tried by court-martial. *See United States v. Uhlman,* 1 M.J. 419 (1976). Consequently, the conviction is void, and the accused is entitled to relief from it. *Fleiner v. Koch,* 19 U.S.C.M.A. 630 (1969).

Article 69, UCMJ, 10 U.S.C. § 869, authorizes the Judge Advocate General to vacate a conviction in a case such as the accused's on the ground, among others, that there is "lack of jurisdiction over the . . . offense." Accordingly, a writ will issue to the Judge Advocate General of the Air Force directing that he vacate the accused's conviction and provide, in accordance with the provision of Article 75, that the accused be restored to all rights, privileges and property affected by the execution of the sentence imposed by the court-martial and approved and ordered executed by the convening authority.

Chief Judge FLETCHER and Judge PERRY concur.

UNITED STATES, Appellee,