## UNITED STATES

v.

**Alan W. BRANTLEY, 201 44 4830, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 76 0008.**

U. S. Navy Court of Military Review.

Sentence Adjudged 30 July 1975.

Decided 24 Nov. 1976.

CDR A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and GLASGOW, JJ.

CEDARBURG, Chief Judge:

The record of trial in this case was returned to the Judge Advocate General of the Navy by our decision, *United States v. Brantley,* No. 76 0008 (N.C.M.R. 19 July 1976), to cause its referral to a general court-martial, directing the military judge to conduct a hearing pursuant to Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a). The military judge was further directed to hear the respective contentions of the parties on whether the convening authority had taken his initial action within 90 days, *Dunlap v. Convening*

*Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), and permit the presentation of witnesses and evidence on this issue. Findings of fact and conclusions of law based thereon were to be entered by the military judge to include the date the action of the convening authority was signed. If the military judge determined the action was signed on the 91st day after trial, then an opportunity was to be accorded the government to present evidence of extraordinary circumstances.

The required action has been taken and the record of trial has been returned to the Court for further proceedings. The supplementary proceedings establish that the convening authority took his action on the 91st day of post-trial confinement. No evidence of extraordinary circumstances causing the delay was received. We have no option but to set aside the finding and sentence and dismiss the charge. We do this with the greatest reluctance. The clear guilt of appellant, established in a trial free of prejudicial error, in which appellant entered a plea of guilty, and the egregious nature of the offense, a revenge-motivated stabbing in the throat of a fellow Marine, forms the basis for our disinclination. The *Dunlap* rule, requiring initial action by a convening authority within 90 days of post-trial confinement, without considering the guilt of an accused, the seriousness of the offense, the absence of prejudicial error or any but "extraordinary circumstances" justifying delay, deprives us of any flexibility to balance the rightful expectation of society to be protected by its judicial system against the actual harm suffered by a convicted felon because of delays in the review of his conviction.

The merit of establishing an inelastic formula to achieve the desirable aim of speedy disposition needs to be carefully reevaluated. The present case is the latest dismissal ordered by the Navy Court of Military Review dictated by adoption of the *Dunlap* rule. Unfortunately, most of these dismissals, as in the present case, involved serious offenses in which the initial action was taken close to but not within the 90 days

prescribed and in which the fairness of the trial proceedings was not seriously disputed. In *Dunlap* itself, there was neither unanimous agreement regarding the essentiality of the remedy adopted to eliminate unreasonable delay nor in the underlying reasons compelling such a draconian measure. The majority opinion written by Judge Quinn and concurred in by Judge Ferguson tied essentiality of post-trial action within an unvarying period of 90 days to a deprivation of speedy trial, equating the period between announcement of findings and sentence until the convening authority's action to a time during which charges were still unlitigated because of the hybrid functions of the convening authority. Judge Quinn stated for the majority, "In military law, the ultimate legal effect of the findings of guilty determined by the court-martial and the sentence imposed by it depends upon the action of the convening authority. . . In significant ways, therefore, the functions of the court-martial and those of the convening authority in the determination of guilt and in the imposition of sentence are so connected that they can be regarded as representing, for the purpose of speedy disposition of the Charges, a single stage of the proceedings against the accused." *Dunlap v. Convening Authority, supra* at 137, 48 C.M.R. at 753.

Chief Judge Duncan strongly dissented. Some, if not all of his remarks, bear repeating. Chief Judge Duncan pointed out, "There is a marked dissimilarity between pre-trial delay and delay in a convening authority's action and the harm that can result from each. . . . Looking to the basis of American jurisprudence, the disdain of pretrial delay has received enormous constitutional, statutory, case law and court rule support. On the other hand, the ire for post-trial delay has been largely words, not action. Confinement before trial of one who is presumed innocent is particularly onerous; even more so in the military where there is no provision for bail. When a trial is delayed, the quality of justice attainable may suffer; as time passes witnesses are often less available and the

evidence less fresh. A person in pretrial confinement is further hobbled in his personal efforts in defense. It is these matters that persuaded this Court to rule as it did in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Notwithstanding the subtle idea that a trial is incomplete until the convening authority acts, the critical reason for the *Burton* rule's existence are [sic] not present after an accused pleads guilty or is found guilty beyond a reasonable doubt. Recognition that a trial is not complete until the convening authority acts does not alter his function which is essentially review of a conviction and sentence. What the Court does today is provide a means where a person found guilty beyond a reasonable doubt in an error-free hearing may escape any sanction." *Dunlap, supra*, 23 U.S.C.M.A. at 141, 142, 48 C.M.R. at 756, 757.

Chief Judge Duncan questioned the "subtle idea that a trial is incomplete until the convening authority acts" and concluded that the "critical reason for the *Burton* rule's existence are [sic] not present after an accused pleads guilty or is found guilty beyond a reasonable doubt." His dissent and the reasons advanced in disagreeing with the majority become more significant in light of Judge Perry's disavowal of the premise that the findings of guilt and sentence imposed by a court-martial are dependent upon the action of the convening authority to give them legal effect. The *ratio decidendi* of the majority in *Dunlap* is bottomed on that premise. In *United States v. Occhi*, 2 M.J. 60, No. 31,512 (U.S.C.M.A. 5 Nov. 1976), Judge Perry stated his viewpoint, in a concurring/dissenting opinion, that it is the military judge [a court-martial] who enters a judgment of conviction by his findings in a court-martial, an act judicial in character, not dependent upon the action of the convening authority to give it legal effect. *Id.* pp. 63–64. Judge Cook took the opposite view however, and relied on that reasoning of *Dunlap* in his *Occhi* opinion. Chief Judge Fletcher did not express an opinion

in *Occhi* on that point but his observations in *United States v. Ledbetter*, footnote 5, 2 M.J. 37 (1976) bear close scrutiny for they give some insight into his thinking on the subject.

Chief Judge Fletcher commented that, while the *Dunlap* decision was bottomed on Article 10, UCMJ, a careful reading of that statute suggests that the opinion has firmer roots in the Court's "supervisory authority" role, *cf., McPhail v. United States*, 24 U.S.C.M.A. 304, 52 C.M.R. 15, 1 M.J. 457 (1976). While he further observed that efforts by the Court of Military Appeals to fashion rules with some flexibility has resulted in more, rather than less, litigation, such litigation is more likely to accord substantial justice than a mechanistic rule which ignores the equities in individual cases because some temporal benchmark was not met. It is anomalous in striving to achieve justice, that adoption of an unvarying time standard for completion of actions, absent truly extraordinary circumstances, results in a far greater likelihood of punishing a minor offender than a truly dangerous criminal. Expanded proceedings frequently result from serious crime, heightening the likelihood that post-trial action will not be taken in time to prevent dismissal, unless full resources are devoted to that case at the expense of orderly and efficient procedures for disposition of all cases. Dismissal is a drastic remedy ultimately exacted against society. Dismissal of charges pursuant to *Dunlap* after adjudication of guilt also represents a classic instance of escape from criminal responsibility through the fortuitous operation of a legalistic "loophole" whose existence can only detract from society's appreciation of the necessity for realistic procedural safeguards during the criminal justice process. A continued reliance upon this severe sanction calls for a reasoned re-examination of its basis if indeed it is now to be grounded in the Court's "supervisory authority" powers rather than the Article 10/speedy trial rationale expressed in *Dunlap*.

Although we are forbidden to reach a conclusion directly contrary to an extant decision of the Court of Military Appeals, *United States v. Heflin*, 23 U.S.C.M.A. 505, 506 footnote 6, 50 C.M.R. 644, 645, 1 M.J. 131, 132 (1975), we take this opportunity to note that it is doubtful that the rationale for the *Dunlap* rule expressed in that opinion, presently reflects the viewpoints of a majority of the Court of Military Appeals. However, until the Court of Military Appeals should re-evaluate *Dunlap*'s emphasis upon the ninetieth day as the chief determinant of inordinate post-trial delay, that day will remain a critical milestone in the processing of courts-martial. We emphasize to every individual engaged in the practice of military justice the importance of completing post-trial reviews within the time-span allotted in *Dunlap*. The fact-situation now at bar is inexcusable; onerous and disruptive as the *Dunlap* rule may be, it must be possible to complete in eighty-nine days what in this or other cases may be allowed to consume ninety-one.

The findings and sentence are set aside and the charge and specification are dismissed.

Judge BAUM and Judge GLASGOW concur.