Stanley M. GRAY, Technical Sergeant and Rohan L. Gabay, Technical Sergeant, U.S. Air Force, Petitioners

v.

J. Jeremiah MAHONEY, Colonel Military Judge, Respondent.

Misc. Nos. 94–8050, 94–8051.

U.S. Court of Military Appeals.

Argued Jan. 6, 1994.

Decided June 15, 1994.

For Petitioners: *Captain Del Grissom* (argued); *Colonel Jay L. Cohen* and *Charles S. Lazar* (on brief).

For Repsondent: *Major Jules D. Silberberg* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

WISS, Judge:

Petitioners Gray and Gabay are two of three men tried by general courts-martial at Andrews Air Force Base, Maryland, for a miscellaney of offenses related to sexual activity with various women. Their deeds were uncovered when Gray's wife viewed videotapes taken by Gray that depicted much of the charged activity and turned them over to authorities.

Notwithstanding the videotape evidence and testimony of at least some of the women involved, each of the petitioners was acquit-

ted of all charges. After authentication of the record of trial, a dispute arose over whether the Government would return the original tapes to Gray; whether petitioners' defense counsel had to return their various videotapes, acquired during discovery, that contained selected segments of the original tapes; and whether the Government could substitute in the authenticated record of trial a written description, in lieu of the edited composite that had been admitted into evidence, as an exhibit.

At a certain point during the evolution of this dispute, the chief judge of the trial circuit that includes Andrews AFB issued an order which petitioners view as contrary to their important interests and which, as well, places the professional well-being of petitioners' defense counsel in some jeopardy. Accordingly, petitioners now seek extraordinary relief in the nature of a writ of prohibition from this Court, see 28 USC § 1651(a), that would forbid enforcement of that order and, in the process of seeking this writ, have mounted a multipronged attack on the authority of the judge to have issued the order. In turn, Air Force appellate government counsel have entered appearance on behalf of respondent and have filed a brief in response to the petition. Thereafter, the parties appeared through counsel in oral argument before this Court.

With benefit of this advocacy and after careful consideration of the rather bizarre events leading to this petition, we now grant the petition and issue the writ to quash the challenged order to the extent indicated, *infra*.

## I

Prior to the courts-martial of petitioners and as part of the discovery process, *see* RCM 701(a), Manual for Courts–Martial, United States, 1984, defense counsel for each petitioner received at various times videotape copies of certain segments of the original tapes. Petitioners' counsel represented in oral argument that, each time the Government decided to add a specification, it would furnish a new videotape to the defense that would include the segment of the original

tapes relating to that specification. Though it is unclear exactly how many of such videotapes are in the hands of petitioners' counsel, there apparently are several.

It is not disputed that the Government at no time prior to or during trial in any manner sought to restrict access to these videotapes by petitioners' counsel. Specifically, the Government neither sought to limit counsel to viewing the original tapes nor sought any protective order or any other condition on defense access from the military judge. *See* RCM 701(a)(2) and (g).

After conclusion of the courts-martial resulting in petitioners' acquittals, the military judge in each instance authenticated the record of trial. Respondent was not the trial judge in either court-martial. Petitioners' counsel has advised the Court that the military judge who presided at the court-martial of Gray still is on active duty and located in the same geographic area but has been reassigned; the military judge who tried Gabay is a reservist who was then on active duty but who now is back home in New Hampshire.

At some point that is uncertain, a sensitivity arose about the future of the original tapes and the various copies. After authentication of the records but before the convening authority had promulgated the results of either of these courts-martial, the staff judge advocate (SJA) wrote a letter dated September 27, 1993, to the military and civilian defense counsel for Gray and to military counsel for Gabay. The letters indicated that his office "has decided not to make additional copies of these videotapes. The composite videotapes admitted into evidence will accompany the original record of trial. No copy, however, will accompany any of the copies of the record of trial." Additionally, the SJA asked that counsel return the copies that had been "provided to" them. "All copies of the videotapes in the Government's possession will be disposed of at the appropriate time." The letter asked that counsel notify him of any objection to this process within 10 days of receipt of the letter.

Counsel for Gabay did not respond, either by written objection or by turning over his

videotapes. On October 6, 1993, Gray's military defense counsel wrote back on behalf of himself and civilian counsel, indicating a number of objections.

First, as to exhibits in copies of the records of trial, counsel cited RCM 1103(i) and submitted that, after authentication, the Government was precluded from altering the record in any way. *See also* RCM 1103(b)(2)(D)(iv)(contents of record include "[e]xhibits or, with the permission of the military judge, copies, photographs, or descriptions of any exhibits"). Counsel complained that "Gray's copy of the record of trial contained," in lieu of any videotape, "a sheet of paper bearing the notations 'Composite tapes 9–12 in the possession of the evidence custodian' and 'Separate Cover'...."

Second, counsel pointed to an earlier letter (apparently written in August 1993) in which Gray had requested return of his original tapes. Relying upon paragraph 14–6a of Air Force Regulation (AFR) 111–1, counsel asserted that, once the Government's legitimate use of the tapes as evidence ended—and it ended with the acquittals—they had to be returned to their owner, since they were not contraband. Finally, while counsel encouraged the SJA "to effectively and immediately dispose of the myriad composite or 'exact' copies of any tapes" that remained in the SJA's custody, they "decline[d] [his] request that [they] return the videotape discovery materials provided to the defense."

One week later, the SJA wrote to respondent. Therein, he represented that "[a]ll of the women [on the videotapes] consented to the sex acts. Some of the women consented to the taping, other women consented to one taping session but not to others, and still other women were never asked for, or granted, their consent." He submitted: "Several of the women involved in these cases are very concerned about the whereabouts of the tapes and strenuously object to any copies remaining in TSgt Gray's possession."

The dilemma:

We have explored various rationales for withholding the tapes. The tapes do not comfortably fit under AFR 111–1's definition of "contraband" since we have found no state or federal law which authorizes outright confiscation. However, since the tapes depict various acts of sexual intercourse between TSgt Grey [sic] and female military members, and between TSgt Gray and the wife of another member of his unit, we strongly believe that their continued availability is contrary to the maintenance of good order and discipline within the wing.

The proposal:

We therefore request that you review the facts, use your inherent authority as Chief Judge, and issue orders requiring:

a. That copies of the videotapes not be included in the records of trial and that brief descriptions of the exhibits be substituted therefor in accordance with AFR 111–1, para 14–9n(2). (Alternatively, the tape could accompany the original record of trial but descriptions be substituted in other copies)

b. That all videotapes currently in the possession of the defense be returned to the government, and

c. That the "original" videotapes provided to the government by Mrs Gray not be returned.

Petitioners' counsel were entirely unaware of this communication. With no notice at all from respondent that he even was involved, much less with opportunity for petitioners and their counsel to be heard (other than consideration of a copy of defense counsel's October 6 letter), respondent published an order on October 26, 1993, entitled "Disposition of Videotapes." The order reflected certain "findings" as a predicate:

(1) There is no reason advanced why discovery material pertaining to a specification of which the accused stands acquitted needs to be retained by the accused or his counsel;

(2) There is no reason advanced why a written description of the physical appearance of any video cassette (or a photo thereof) along with a brief general synopsis of the contents would not suffice as a substitute for the tape(s) in any record of trial where the exhibit is irrelevant to an

offense of which the accused stands acquitted; and,

(3) The original tapes, provided by TSgt Gray's wife to military investigators are not contraband, and have not lost their status as private property.

"Consonant with" these findings, respondent in substance: (1) ordered defense counsel to return all videotape copies in their possession to the prosecution for erasure, "without making or retaining" any copies thereof; (2) ordered substitution of a description of the videotapes in evidence as exhibits "in the original and in all copies of the record[s] of trial"; and (3) ordered that the original tapes be returned to petitioner Gray, but only if written releases first are obtained from every person appearing on them—otherwise, the tapes are to be erased prior to return.

Counsel for petitioners resisted this order. For instance, Gabay's counsel, speaking for the first time on this matter (Nov. 8, 1993), strenuously objected to the *ex parte* basis of the order.[1] Additionally, he questioned the jurisdiction of respondent to interpose himself at all in this matter, since he was not the military judge who had tried his client, as well as questioned respondent's jurisdiction to act in any event postauthentication except to protect substantial rights of the accused or in other very narrow circumstances not presented here, *see* RCM 1102(b)(2).

Respondent answered counsel's letter by a letter of his own dated November 9, 1993. After explanation of his rationale, respondent concluded: "My order with respect to any videotapes you were provided as discovery still applies. Failure to comply by 30 November 1993 will be reported to the TJAG [the Judge Advocate General's] Ethics Advisory Committee."

Petitioners filed the instant petition for extraordinary relief from this order on November 16, 1993. While the petition was pending, respondent wrote to the Judge Advocate General on December 1, 1993. In part, he stated:

Since reason and persuasion have failed, and since the UCMJ provides no direct sanction for counsel's violation of my order, I request you refer this matter to your ethics committee, which is empowered to recommend sanctions affecting military and civilian counsel's admission to practice before Air Force courts-martial. Accordingly, I request review of this matter by TJAG's Advisory Committee on Ethics and Standards.

The following day, military and civilian counsel for petitioner Gray rejoined in a letter to the Judge Advocate General. They advised that they had filed a timely petition in this Court challenging respondent's order, submitted that this Court is the "appropriate forum" in which to make such challenge, and assured that they "are ready and willing to comply with any Order [from this Court] affirming [respondent's] Order" should that occur. They asked that their letter be considered by the Judge Advocate General in his evaluation of respondent's request and that it be attached, if the matter is forwarded to the ethics committee. Respondent's counsel in oral argument before this Court advised that the Judge Advocate General has deferred submitting the matter to the committee, as respondent had asked, pending decision by

---

1. We are similarly troubled. Canon 3B(7), American Bar Association's Model Code of Judicial Conduct (August 1990), instructs that, with specific exceptions not relevant here, "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding...." The Commentary makes clear that, other than the limited exceptions just mentioned, "[t]he proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding...." *Accord* Canon 3B(7), Uniform Code of Judicial Conduct for Military Trial and Appellate Judges, AF/JA Operating Instruction No. 04, 15 February 1991. Much of the personal and professional consternation apparently felt by all involved in these events might have been avoided had the SJA pursued his concerns in some manner other than by writing his private letter to respondent and had respondent not imposed a final order on petitioners and their counsel without notice and an opportunity to be heard.

this Court.[2]

In due course, we issued an order on December 22, 1993, in which we granted an earlier-filed motion to temporarily enjoin enforcement of respondent's order to destroy the original tapes; set oral argument on this matter for January 6, 1994; and permitted respondent through counsel to file a pleading in response to the petition on or before January 3, 1994. As indicated earlier, a responsive pleading was filed, and the argument occurred as scheduled.

## II

We pause at this point to address two matters of preliminary importance—jurisdiction of this Court over this matter and ripeness of the issues presented in the petition.

■ Respondent does not dispute the jurisdiction of this Court to entertain the instant petition. Counsel for respondent did urge during oral argument that, to whatever extent this Court might hold that respondent's actions were ultra vires, so, too, would be any decision by this Court. In context, however, it is clear that counsel's reservations on this matter were limited to jurisdiction over the *substance* of respondent's order. That is, for example, if respondent's order concerning Gray's property rights in the original tapes was ultra vires, then likewise in counsel's view any decision by this Court purporting to decide those property rights would be out-

side the scope of this Court's limited jurisdiction.

In any event, respondent has posed no challenge to this Court's jurisdiction to determine whether his order was judicial usurpation of authority that properly would be the subject of a writ of prohibition. *See generally Harrison v. United States*, 20 MJ 55 (CMA 1985); *Satterfield v. Drew*, 17 MJ 269 (CMA 1984); *United States v. Suzuki*, 14 MJ 491 (CMA 1983); *Dettinger v. United States*, 7 MJ 216 (CMA 1979); *McPhail v. United States*, 1 MJ 457 (CMA 1976).

■ Respondent does suggest, however, that the issues presented by petitioners are not ripe for our consideration. His counsel submits, for instance, that petitioners have available to them a petition for extraordinary relief in the Air Force Court of Military Review, as well as recourse to various informal nonjudicial avenues such as seeking intervention by the chief circuit defense counsel, the Chief of the Trial Judiciary of the Air Force, and even the Judge Advocate General himself.

This challenge to our proceeding now is easily dismissed. Presently there is no requirement that a petition for extraordinary relief be filed in a Court of Military Review as a prerequisite to this Court's consideration of a matter. While petitioners might have done so and then appealed any adverse decision to this Court, they were not required to do so in order to ripen their claims.

2. Counsel further candidly advised this Court, however, that, "regardless of the outcome of the ruling here today, this matter of noncompliance will be referred to the ethics committee. It raises some issues perhaps of first impression that the Air Force Judge Advocate General's Department would like to have further deliberation and further advice on from the members of its ethics committee." Counsel has indicated that the role of this committee could conceivably include recommendation that ethical standards be promulgated to apply to situations such as this, as well as recommendation of sanctions against counsel, including decertification as defense counsel.

Clearly, certification of JAG officers as defense counsel is within the administrative prerogative of the Judge Advocate General. *See* Art. 27(b)(2), Uniform Code of Military Justice, 10 USC § 827(b)(2). Normally, that would not be a matter within the statutory interest of this Court. *In*

*re Taylor*, 12 USCMA 427, 429, 31 CMR 13, 15 (1961). We do not on this occasion further address the question, however, whether it might be within the scope of this Court's interest if the status of a particular lawyer's certification is adversely affected by counsel's reasonable performance of duties as an independent defense counsel in vigorous pursuit of the client's best interests. *Cf. id.* at 430, 31 CMR at 16 ("Under its organic act, the Court has power to review certain courts-martial cases. Undoubtedly, it also has incidental powers, the limits of which, however, we have not attempted to define." (Citation omitted.)). We trust that whatever inquiry that might ensue into the ethical conduct of petitioners' counsel will properly involve consideration of this Court's decision, *infra*, on their *judicial* challenge to a *judicial* order that they rationally believed was adverse to their clients' substantial interests.

As to the *informal* routes suggested by respondent's counsel, we conclude that they amount to a non sequitur as possible relief from a *judicial order* that affected petitioners' substantial legal interests and their counsel's professional ethics. Additionally, we cannot help wonder aloud about the appropriateness of some military superior of a military judge interceding in some manner to interfere with a military judge's judicial ruling. *Cf. United States v. Allen*, 33 MJ 209 (CMA 1991); *United States v. Mabe*, 33 MJ 200 (CMA 1991); *United States Navy–Marine Corps Court of Military Review v. Carlucci*, 26 MJ 328 (CMA 1988).

These initial matters resolved, we now move to the merits of the petition.

### III

As has been indicated, there were three distinct elements of respondent's order. Petitioners challenge each of them for different reasons and, as well, level a broadside attack on the authority of a military judge to take any action postauthentication on his own initiative. They distinguish such cases as *United States v. Scaff*, 29 MJ 60 (CMA 1989), and *United States v. Griffith*, 27 MJ 42 (CMA 1988), as instances in which a military judge took some action *prior* to authentication. Counsel for respondent defends against the more general attack by asserting during oral argument that a military judge does indeed have continuing jurisdiction of a residual nature, even postauthentication, in order to "police military justice activity in his jurisdiction." In light of our treatment of the three elements of the order, we need not address this more far-reaching challenge or any of its more subtle nuances.[3]

### The Original Tapes

■ Petitioner Gray argues that respondent in this case has acted to resolve private property interests in his tapes and that that is entirely a civil-law matter which is outside respondent's criminal-law jurisdiction. He argues, further, that it cannot even be contended that respondent acted to fill a legal vacuum, since paragraph 14–6 of AFR 111–1 sets out an appropriate vehicle for disposition of private property, once the Government's legitimate evidentiary interest in it has ended.

During oral argument, counsel for respondent conceded that this element of respondent's order "was clearly ultra vires" because respondent had no jurisdiction to resolve private property interests. Counsel expressly recognized that Gray has a property interest in the tapes and assured the Court that the Government does not intend to destroy its contents.

■ Extraordinary writs are reserved for extraordinary circumstances. *United States v. LaBella*, 15 MJ 228, 229 (CMA 1983). Inasmuch as respondent's concession and assurance have removed any controversy between the parties on this element of respondent's order, this would seem to be an inappropriate case in which to exercise the Court's extraordinary-writ power. Accordingly, we will accept the concession and quash that portion of the challenged order, expressly reserving for a more appropriate occasion any consideration and decision of the merits of the provocative issue of a military judge's authority to act in this circumstance.

### Return of Defense Copies

■ Counsel for petitioners assured this Court in oral argument that physical return

---

3. Specifically, we need not and do not decide whether some sort of inherent authority in aid of courts-martial might be possible postauthentication but prior to the convening authority's action—the only period of time during which, otherwise, no judge or court would have jurisdiction over the case. Judges Cox and Gierke did write in their lead opinion in *United States v. Weiss*, 36 MJ 224, 228 (CMA 1992), *aff'd*, — U.S. —, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994): "Military judges have no inherent judicial authority separate from a court-martial to which they have been detailed." (*Cited with approval*, — U.S. at —, 114 S.Ct. at 760.) That does not ineluctably require a conclusion, however, that a military judge—at least, unlike this case, the judge who presided over the trial—does not have some sort of inherent authority under some circumstances until the jurisdiction of the Court of Military Review is triggered by the convening authority's action. We leave that question for another day.

of the cassettes is not in issue; counsel recognized that the cassettes are government property and represented that they are prepared to return them. They contest only respondent's restriction in his order that prohibits them from making any copies on their privately-owned cassettes first. In this light, then, our consideration of this aspect of the petition is limited to the electromagnetic representations on the cassettes, not the cassettes themselves.

RCM 701 is a comprehensive rule that addresses virtually all aspects of the discovery process. RCM 701(a)(2) requires "the Government [to] *permit the defense to inspect:* (A) Any books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof ..." which are in the Government's possession. (Emphasis added.) Thus, in the case of videotapes of some sensitivity for instance, the Government need not make copies for discovery but, instead, may acquiesce only to restricted-custody viewing. If the defense balks or if the Government wants to place some other restriction or condition on making such sensitive evidence available, RCM 701(g)(1) provides recourse: "The military judge may, consistent with this rule, specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are just."

Here, of course, the Government did not seek any condition or restriction on discovery of the tapes. Instead, the Government delivered a number of videotapes of varying composition to counsel for each petitioner with no strings attached. In the face of an orderly process in RCM 701 by which any concerns relating to discovery of evidence may be resolved *before* the evidence has been made openly available, unconditional copying and delivery waives any posttrial effort to recover the contents of the copies. Generally, the Government cannot pull evidence back by a string that never was attached before or during the trial.

Therefore, we will quash that portion of respondent's order which prohibits petitioners and their counsel from making videotape copies of the cassettes in their possession prior to returning those cassettes to the Government.

### Substitution of Description in Record of Trial

During oral argument, petitioners' counsel asserted that petitioners continue to believe that substitution in the original and copies of the record of trial of an oral description in lieu of the videotape exhibit admitted at trial is improper. *See* Art. 65(b), Uniform Code of Military Justice, 10 USC § 865(b); RCM 1103(e); paras. 14–12, 14–16c, and 14–9n, AFR 111–1. He acknowledged, however, that petitioners perceive no direct threat to their interests by this substitution, given their acquittals and their possession of their own copies of the exhibit, *supra.*

Petitioners in effect have withdrawn their petition as to this element of respondent's order. In this context, discussion of the merits of this issue would be academic, so we decline to invoke our extraordinary-writ power in this connection.

### IV

The petition for extraordinary relief is granted. Those aspects of respondent's challenged order that involve 1) disposition of the original tapes and 2) copying the cassettes now in possession of petitioners and their counsel prior to their returning the cassettes to the Government are hereby quashed.

Chief Judge SULLIVAN and Judges COX and CRAWFORD concur.

GIERKE, Judge (concurring in the result):

I agree that the military judge's order should be quashed, but I disagree with the rationale of the majority opinion. Accordingly, I concur only in the result.

The majority's focus on the *ex parte* nature of the proceeding suggests that the military judge had some inherent supervisory authority which he merely used improperly. Indeed, the staff judge advocate involved the military judge in this dispute when he asked him to invoke his "inherent authority as Chief Judge." 39 MJ at 301. *See United States v. Mahoney*, 36 MJ 679, 683 (AFCMR

1992) (another case in which Judge Mahoney invoked his "inherent authority.").

I disagree with the majority's notion of "inherent authority." In *United States v. Weiss,* 36 MJ 224 (CMA 1992), *aff'd,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994), Judge Cox and I said, "Military judges have no inherent judicial authority separate from a court-martial to which they have been detailed." We also pointed out that, when military judges "act, they do so as a court-martial, not as a military judge." 36 MJ at 228, *cited with approval,* —— U.S. at ——, 114 S.Ct. at 760. Finally, we pointed out that "[a] court-martial is a temporary court, called into existence by a military order and dissolved when its purpose is accomplished." 36 MJ at 228.

Judge Mahoney was never detailed to petitioners' court-martial and therefore had no inherent authority to act. Even if we could find that Judge Mahoney impliedly detailed himself to this case, his authority to order post-trial sessions terminated when the record was authenticated. RCM 1102(d), Manual for Courts–Martial, United States, 1984. The convening authority did not order a post-trial session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), and probably had no authority to do so in light of the language of RCM 1102(b)(2). The court-martial was over; it ceased to exist. There was no court-martial in existence from which Judge Mahoney could derive judicial authority.

I also disagree with the majority's suggestion that a protective order must be issued before release of evidence in order to be enforceable. 39 MJ at 305. I am not prepared to preclude military judges from issuing protective orders after release of evidence when circumstances arise postrelease that make such orders appropriate.

It may well be desirable for military judges to exercise judicial authority independent of specific courts-martial to which they may be detailed, but that authority must come from a statute or executive order. The President has already prescribed some judicial duties independent of courts-martial. *See* Mil.R.Evid. 315(d)(2), Manual, *supra* (military judge may authorize searches if authorized by regulations of Secretary of Defense or Secretary concerned). In the absence of a statute or executive order, I am not prepared to extend the authority of military judges by judicial fiat.