Richard L. DOBZYNSKI, U.S. Navy, Petitioner,

v.

Commander Michael P. GREEN, USN, Military Judge

and

Captain G.E. Gneckow, USN, Commanding Officer, USS Richmond K. Turner, Respondents.

No. 82–36.

U.S. Court of Military Appeals.

July 25, 1983.

For Petitioner: *Lieutenant Commander David S. Durbin,* JAGC, USNR (argued); *Lieutenant Philip J. Shebest,* JAGC, USNR (on brief); *Major John C. Bowers,* USMC, *Lieutenant A. Mark Lee,* JAGC, USNR (on petition).

For Respondents: *Lieutenant Ronald S. Wasilenko,* JAGC, USNR (argued); *Commander W.J. Hughes,* JAGC, USN (on brief).

Amicus Curiae on Behalf of Respondents: *Captain Daniel N. Velling* (argued); *Colonel R.R. Boller, Colonel James Kucera, Lieutenant Colonel John T. Edwards, Major Joseph A. Rehyansky* (on brief).

Opinion of the Court

FLETCHER, Judge:

The present petition for extraordinary relief is in the nature of a writ of mandamus

regarding imposition of nonjudicial punishment. Under the facts as herein presented, we conclude that there is no legal error calling for invocation of our power to grant a petition for extraordinary relief. We express our strong opinion, however, that the disposition of the offenses in this case lends itself, at the very least, to the impression of injustice—a perception to be avoided in a fundamentally fair justice system. We turn, first, to the perimetric facts presented.

This case arose from possession of marihuana on board the USS RICHMOND K. TURNER. Having received an anonymous note to the effect that a cache of drugs was hidden in the officers' head, the executive officer authorized a search, resulting in discovery in a nearby locker of a seabag identified as belonging to petitioner and an unidentified black civilian briefcase. This briefcase was opened and what appeared to be marihuana was found inside. Both the briefcase and its contents were then coated with yellow theft-detection dye. Subsequently, petitioner was encountered with traces of this dye on his person. The ship's executive officer ordered the marihuana seized. Petitioner admitted ownership of the briefcase but denied ownership of the marihuana. Furthermore, petitioner consented to a search of his personal locker. A small quantity of marihuana was found therein. For the marihuana found in the locker, petitioner was awarded nonjudicial punishment at captain's mast.

On December 2, 1981, petitioner's case was referred to a special court-martial for possession of the marihuana within the briefcase, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The trial judge, prior to the introduction of evidence on the merits, granted a motion to suppress, under the Fourth Amendment, all evidence regarding the search for and seizure of the marihuana contained in the black civilian briefcase. At this point, the convening authority withdrew the charges from the properly convened special court-martial.

Subsequently, on January 29, 1982, the charges were referred to captain's mast. After finding petitioner guilty as to the marihuana in the briefcase, the Captain awarded nonjudicial punishment of 45 days' restriction, 45 days' extra duty, and forfeiture of $250 pay per month for 2 months.

 Before us, petitioner claims he is not seeking review of his latter Article 15 * punishment; rather he seeks review of his special court-martial where charges were withdrawn after suppression of evidence. In other words, petitioner seems to be arguing that the military judge violated his due-process rights by allowing withdrawal of charges after arraignment and suppression of evidence prior to presentation of evidence on the merits. We cannot agree that such is the case.

It is clear that paragraph 56b, Manual for Courts-Martial, United States, 1969 (Revised edition), allows withdrawal of charges for good cause. Further, "[a]mong the proper grounds upon which a particular specification may be withdrawn ... [is] that the evidence in support thereof is insufficient." Thus withdrawal by the convening authority of the charges is certainly not a due-process violation. However, he goes on to assert that paragraph 56b, Manual, *supra,* was violated in that the charges were "withdrawn ... with a view to further prosecution." That provision states:

> Further, a convening authority normally should not withdraw an entire case after commencement of the trial with a view to further prosecution unless he determines that urgent and unforeseen military necessity requires that the trial be postponed or terminated, and it does not appear that the military situation will permit the rescheduling or resumption of the trial within a reasonable time. However, this action may sometimes be appropriate for other good cause in the interest of justice.

We agree with the respondents that this Manual provision does not refer to nonjudicial punishments, which are not criminal in

---

* Uniform Code of Military Justice, 10 U.S.C. § 815.

nature. *Parker v. Levy,* 417 U.S. 733, 750, 94 S.Ct. 2547, 2558, 41 L.Ed.2d 439 (1974); *cf. Middendorf v. Henry,* 425 U.S. 25, 31–32, 96 S.Ct. 1281, 1285–1286, 47 L.Ed.2d 556 (1976). Petitioner cites no authority for the proposition that a military judge has any authority or could take any action respecting charges which are withdrawn. We further conclude that the convening authority acted in accordance with the law and within his discretion in withdrawing the charges from the special court-martial.

■ The underlying purpose of Article 15 disciplinary proceedings is the maintenance of discipline. *See* para. 129a, Manual, *supra.* Under these facts, it is undeniable that petitioner's possession of marihuana on board ship called for discipline to maintain morale and good order. The nonjudicial punishment imposed was just and appropriate for the offense committed. A commander has discretion regarding whether such charges should be referred to the disciplinary system and disposed of under Article 15, or whether they warrant introduction into the criminal justice system for disposition at a special court-martial, where legal requirements are more complex and the possible punishment more costly to the alleged criminal. Here his role requires serious evaluation of the strength of the case, the admissibility of the evidence, and the effect on his command. This election should not be made casually; even though he may be able to rely on the disciplinary system if the evidence is insufficient, he should realize that the effect is a perception of injustice in the eyes of the layman who will see the series of actions as some sort of attempted prosecution-at-any-cost. Such a perception does not serve the commander's interest in being seen as a fair and detached imposer of discipline and orderly administration.

However, all perception aside, we conclude, under the pertinent manual provisions in light of the code, that the charges were properly withdrawn from the special court-martial and that the Article 15 punishment was properly imposed.

The petition is dismissed.

Judge COOK concurs.

EVERETT, Chief Judge (dissenting):

This case presents these two issues: (1) Were petitioner Dobzynski's rights infringed by his commander's action in withdrawing the charges from the court-martial and imposing nonjudicial punishment? and (2) if so, does our Court have jurisdiction to grant relief? From my examination of the record, I conclude that an affirmative answer must be given in each instance.

I

In its original form, Article 15(b), Uniform Code of Military Justice, 10 U.S.C. § 815(b), allowed "[t]he Secretary of a [military] Department . . . by regulation, [to] place limitations on . . . the applicability of this article to an accused who demands trial by court-martial." Pursuant to this authority, the Army and the Air Force allowed an accused to decline nonjudicial punishment, while the other Services did not.[1]

When in 1962 Congress increased the punishments imposable under Article 15, it provided, as a compensating safeguard, that "punishment may not be imposed upon any member of the armed forces under this article if the member has, before the imposition of such punishment, demanded trial by court-martial in lieu of such punishment." The only exception was for a servicemember "attached to or embarked in a vessel"—an exception which presumably Congress created because the special conditions prevailing aboard a ship require quick, decisive enforcement of justice by its captain.

Under the present language of Article 15, the problems we confront in the present case would be absent if Dobzynski had not been "attached to" a ship. In that event, if he had declined nonjudicial punishment after the charges had been withdrawn from

1. *See* para. 132, Manual for Courts-Martial, United States, 1951.

his special court-martial, his commander would have had no choice but to refer the charges back to a court-martial[2] or dismiss them. On the other hand, if Dobzynski had not demanded trial by court-martial when offered nonjudicial punishment, his failure to use his available statutory right to trial would have waived any objection either to the withdrawal of charges from the court-martial or to the inadmissibility of evidence on which the commander relied in deciding to impose nonjudicial punishment.[3]

However, since petitioner was "attached to" a ship, he could not have demanded trial by court-martial if, *at the outset,* his commander had offered him nonjudicial punishment. Although it is unclear to me what rights, if any, he then would have had to receive a hearing of some type[4] or to invoke exclusionary rules of evidence,[5] I need not consider that issue since this was not the sequence of events in the present case.

Petitioner's commander did not utilize nonjudicial punishment in the first instance. Instead, he referred to a special court-martial charges alleging the commission of drug offenses by Dobzynski. Subsequently, the military judge of that court-martial determined in a pretrial session pursuant to Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), that vital government evidence should be suppressed. Thereupon, the convening authority withdrew the charges from the special court-martial be-

cause of insufficiency of the evidence and, over objection, proceeded with nonjudicial punishment, just as if he were writing on a clean slate. In my view, this course of action violated the Uniform Code of Military Justice.

Article 15(b) authorizes certain commanding officers to impose specified "disciplinary punishments *for minor offenses* without the intervention of a court-martial." (Emphasis added.) For purposes of this Article, "[t]he term 'offenses' . . . includes only those acts or omissions constituting offenses under the punitive articles of the Uniform Code of Military Justice." Para. 128*b,* Manual for Courts-Martial, United States, 1969 (Revised edition). This paragraph continues:

> Generally, the term "minor" includes misconduct not involving any greater degree of criminality than is involved in the average offense tried by summary court-martial. This term ordinarily does not include misconduct of a kind which, if tried by general court-martial, could be punished by dishonorable discharge or confinement for more than one year.

Paragraph 128 makes clear, however, that a commander must take into account all the circumstances surrounding an offense and that he is not precluded from utilizing nonjudicial punishment even though the maximum punishment authorized by the Manual for the offense could only be imposed by a general court-martial. Thus, an offense

---

**2.** The prohibition against double jeopardy contained in Article 44, Uniform Code of Military Justice, 10 U.S.C. 844, would not bar rereferral to another court-martial for trial, since the withdrawal of charges preceded "the introduction of evidence," even though it occurred after a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), had been conducted.

**3.** Nonjudicial punishment is a form of alternative dispute resolution and, when employed with the accused's concurrence, it does not require use of the procedures and rules of evidence employed in a court-martial.

**4.** Captain's mast used in the Navy and Coast Guard and office hours in the Marine Corps afford an accused a more extensive hearing in connection with the imposition of nonjudicial punishment than is customarily available in the Army and Air Force. *Compare* para. 133*a with*

para. 133*b,* Manual for Courts-Martial, United States, 1969 (Revised edition). *See also* JAG-MAN 0101*d*(2).

**5.** Article 31(d), UCMJ, 10 U.S.C. § 831(d), provides that certain evidence shall not "be received in evidence . . . in a trial by court-martial." However, this language would not preclude application of the exclusionary rule to nonjudicial punishment when violations of the Fourth and Fifth Amendments were involved. Since the doctrine of waiver does not apply here—as it would when an accused fails to exercise a statutory right to demand trial by court-martial—I am unsure what procedural safeguards are constitutionally required when a servicemember has no right to decline nonjudicial punishment.

may be "minor" in one context and "serious" in another. Therefore, even though Dobzynski's alleged offenses were of a kind sometimes referred for trial by general court-martial and the authorized punishment included a dishonorable discharge, several years' confinement, and total forfeitures, *see* para. 127*c*, Table of Maximum Punishments, Manual, *supra*, his commander was free to utilize nonjudicial punishment in the first instance, rather than refer charges to a court-martial for trial.

When initially the commanding officer referred the charges to a special court-martial instead of employing nonjudicial punishment, the situation changed dramatically. By this action, the commander attested that Dobzynski's crimes were not "minor offenses" within the meaning of Article 15.[6] In the commander's eyes, they presumably possessed a "greater degree of criminality than is involved in the average offense tried by summary court-martial," *see* para. 128*b*, Manual, *supra*. Since the commander himself had determined that these offenses were not "minor offenses" under Article 15, he was no longer in a position to claim that he could award nonjudicial punishment for them over the accused's objection.[7]

Under some circumstances a commanding officer might claim that, after referring charges for trial by court-martial, he received information which demonstrated to him that the offenses were only "minor," and therefore he withdrew charges from a court-martial and proceeded under Article 15. Not even a pretense exists that this occurred in the present case. Instead, the only change in circumstances was that the convening authority—the captain of petitioner's ship—learned that, because of an adverse ruling by the military judge, the Government could not prove its case in a trial. Since by his own actions Dobzynski's commander had manifested that "minor of-

fenses" were not involved, *see* Article 15(b), he was not entitled thereafter to impose nonjudicial punishment over the accused's objection. The conditions prescribed by Article 15 for use of nonjudicial punishment had not been met.

The same conclusion follows from an examination of the provisions of Article 15(a) which confer a right to demand "trial by court-martial in lieu of . . . [nonjudicial] punishment." The exception in that Article for servicemembers "attached to or embarked in a vessel" was intended to uphold the traditional authority of a ship's captain by empowering him to impose "disciplinary punishments for minor offenses"—even over the accused's objection. For such offenses, the delay involved in waiting until a court-martial could be convened would be too great a price to pay in order to assure accused the safeguards of a trial. On the other hand, Dobzynski's captain—by referring the charges for trial by court-martial—demonstrated that he was willing to incur the delay of a trial, rather than invoke nonjudicial punishment for the alleged offenses. In so doing, he established at the same time that there was no urgency in the matter which required dispensing with the protections that would be available to Dobzynski in a trial by court-martial.

Before referring the charges to trial, petitioner's commander could have relied on the statutory exception under Article 15(a) as a basis for denying any demand by Dobzynski for trial by court-martial. However, as indicated by the reference in Article 15(a) to "trial by court-martial *in lieu of* such punishment" (emphasis added), trial by court-martial and nonjudicial punishment are mutually exclusive alternatives. The commander's choice of trial by court-martial was inconsistent with any subsequent effort on his part to impose nonjudicial

---

**6.** Under the principle that charges usually are referred to the lowest level of forum that can impose an adequate punishment, *see* para. 33*h*, 1969 Manual, *supra*, petitioner's commander presumably would have used Article 15, UCMJ, 10 U.S.C. § 815, in the first instance if he had thought the maximum punishment available

thereunder would have been adequate. *See also* para. 129, 1969 Manual, *supra*.

**7.** If the accused does not object, he waives any right that otherwise he might have to complain about the commander's noncompliance with the intent of Article 15.

punishment for the same offenses. Furthermore, after referring the charges for trial, the commander could no longer invoke the exception for a servicemember "attached to or embarked in a vessel," because he had negated the very premise on which that exception rests—namely, that, by reason of the necessities of seafaring operations, it takes too much time and effort to try by court-martial "minor offenses" committed by shipboard personnel.

The justification for concluding that, under the circumstances of this case, nonjudicial punishment could not be imposed over the accused's objection is even greater when attention is given to the consequences of the punishment. For example, in the event of some subsequent court-martial, the record of nonjudicial punishment may be offered in evidence by the Government during presentence proceedings. *Cf.* para. 75*b*(2), Manual, *supra.* Moreover, such a record may be used in connection with an administrative discharge or a bar to reenlistment. Thus, in light of the underlying policy of Article 15(a) to give a servicemember the right to demand trial by court-martial, a commanding officer should not be allowed to rely on the exception for members "attached to or embarked in a vessel," when he has demonstrated that the rationale for this exception is inapplicable.

## II

In view of my conclusion that in the present case the imposition of nonjudicial punishment on Dobzynski was illegal, I must inquire whether our Court can give him any relief. Although the Government offers strong arguments to the contrary, I am convinced that we have such jurisdiction.

The Uniform Code makes no provision for subsequent judicial review of the legality of punishments imposed under Article 15. On the other hand, nothing in Article 15 specifically precludes such review; and, while Article 76, 10 U.S.C. § 876 contains a finality provision for "the proceedings, findings, and sentences of courts-martial," there is no such limitation on the review of nonjudicial

punishments. Since only light punishments were imposable under Article 15, as it was originally enacted, Congress probably did not advert to the possibility that servicemembers who received nonjudicial punishments would later seek judicial review thereof.

In any event, the Court of Claims and the recently created United States Claims Court have engaged in judicial review of nonjudicial punishments. *See Cochran v. United States,* 1 Cl.Ct. 759 (Cl.Ct.1983). Furthermore, our own Court has occasionally decided whether a nonjudicial punishment was validly imposed in determining whether a record of that punishment was admissible in sentence proceedings under paragraph 75*b*(2), Manual, *supra. See, e.g., United States v. Negrone,* 9 M.J. 171 (C.M.A.1980).

In my view, the situation here is the same as that which would exist if the commander of a land-based servicemember attempted to award him nonjudicial punishment despite his demand for trial by court-martial. Under such circumstances, the commander's violation of the clear mandate of Article 15 would deprive the servicemember of his, statutory right to adjudication of his guilt or innocence in a forum where he would enjoy constitutional safeguards. "Part of our responsibility [under the Code] includes the protection and preservation of the Constitutional rights of persons in the armed forces." *United States v. Frischholz,* 16 U.S.C.M.A. 150, 152, 36 C.M.R. 306, 308 (1966); *see United States v. Bevilacqua,* 18 U.S.C.M.A. 10, 11, 39 C.M.R. 10, 11 (1968). Moreover, we have referred to "the intent of Congress to confer upon this Court a general supervisory power over the administration of · military justice." *United States v. Gale,* 17 U.S.C.M.A. 40, 42, 37 C.M.R. 304, 306 (1967). Consistent with such statements, I consider the conclusion inescapable that a servicemember would be entitled to relief from this Court if his clear statutory right to trial by court-martial has been arbitrarily abridged by his command-

er.[8] *Cf. McPhail v. United States*, 1 M.J. 457 (C.M.A.1976).

Unlike the hypothetical land-based servicemember, Dobzynski initially had no statutory right to reject nonjudicial punishment and demand trial by court-martial. However, once his commander had elected the alternative of trial by court-martial, petitioner was entitled to have his guilt or innocence adjudicated in such a forum, where he would possess rights not available in connection with nonjudicial punishment. At that point, Dobzynski's commander was not free to interfere with those rights. Indeed, he was in the same position as the commander of a land-based servicemember who has demanded trial by court-martial. Just as I believe that judicial relief from our Court would be available to preclude interference by his commander with the right to demand trial of a land-based servicemember, I conclude that Dobzynski should be granted such relief from his commander's interference with his right to a trial by court-martial.

The same conclusion can be reached by a different route. Originally the charges against petitioner were referred to a special court-martial, which, if it had found him guilty, could have adjudged a sentence eligible for direct review under Articles 66 and 67 of the Code, 10 U.S.C. §§ 866 and 867, respectively. Thus, the case was within our Court's potential jurisdiction. Those charges were withdrawn under the purported authority of paragraph 56 of the Manual for Courts-Martial. However, paragraph 56 *a* directs, "In no event will a specification or case be withdrawn *arbitrarily or unfairly to the accused.*" (Emphasis supplied). Under my analysis, the withdrawal was clearly arbitrary and unfair, because it was accomplished as a means to facilitate the imposition of unlawful nonjudicial punishment.

If the purpose of the proposed withdrawal had been known before the withdrawal of charges was accomplished, I believe we could have granted extraordinary relief to

prohibit the convening authority from illegally withdrawing the charges. By so doing, we would be acting in aid of our potential jurisdiction to review the case under Article 67, since, in the event of a conviction, the special court-martial would be empowered to adjudge a sentence which included a bad-conduct discharge. *See* Articles 66 and 67. In my view, the circumstance that the improper withdrawal of charges took place before we granted extraordinary relief does not oust our power to grant that relief.

Furthermore, jurisdiction exists here to grant extraordinary relief in order to preserve the integrity of the court-martial process against a type of command influence prohibited by Article 37 of the Code, 10 U.S.C. § 837. By imposing nonjudicial punishment in this case, Dobzynski's commander is making the point that, even if a sailor succeeds in asserting his legal rights in a court-martial, he will still be punished. Thus, there is much less reason to make a motion to suppress or to contest guilt in a court-martial, because punishment is inevitable in any event. Indeed, if he chooses, the commander can even increase the nonjudicial punishment he imposes in retaliation against an accused who has been victorious in court-martial proceedings. *Cf. Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The foreseeable result is that henceforth members "attached to or embarked in a vessel" will be subject to a "chilling effect" on their assertion of the rights available to them in a trial by court-martial. They will be under greater pressure to plea bargain because they have no prospect of complete victory. In light of such possible consequences for the court-martial process, I am doubly sure that our Court is empowered to grant relief in the case at bar.

In an address delivered on May 18, 1983, to the Annual Homer Ferguson Conference

---

**8.** Navy Appellate Government Counsel conceded that in such a situation we would have jurisdiction to issue a writ of prohibition. Army Appellate Government Counsel, arguing as *amicus curiae,* took the position that, even then, we lacked jurisdiction.

on Appellate Advocacy, Professor Edward H. Cooper, a leading authority on extraordinary writs, suggested that in determining whether to grant extraordinary relief, our Court and the Courts of Military Review should not be limited by civil court precedents. Instead, unless "insuperable obstacles are raised by the history of the Uniform Code of Military Justice," "the flexible process of interpretation that has characterized the growth of [28 U.S.C.] § 1651 learning in other areas, and more diffuse notions of 'inherent power' drawn from the particular needs of the military justice system, may be enough" to warrant extraordinary relief. Not only do I perceive no obstacles in the history of the Code which would preclude extraordinary relief in the present case, but indeed to deny relief here is to abdicate our statutory responsibility to supervise military justice.

### III

The majority opinion states that "[t]he underlying purpose of Article 15 disciplinary proceedings is the maintenance of discipline." 16 M.J. 84, 88. I agree fully on that point; but it seems to me that an underlying purpose of court-martial proceedings is also the maintenance of discipline. In the present context the effort to distinguish between "punishment" adjudged by courts-martial and "punishment" awarded as "discipline" under Article 15 is a false dichotomy, which leads to ridiculous conclusions.

The term "minor offenses," for which punishment is imposable under Article 15, "includes only those acts or omissions constituting offenses under the punitive articles of the Uniform Code of Military Justice." Para. 128b, Manual, supra. A commander's failure to comply with this requirement may lead to a successful appeal in cases where an appeal is allowed under paragraph 135 of the Manual.[9] Also, it can be the basis for judicial relief. See, e.g.,

*Cochran v. United States, supra.* Thus, the subject matter of nonjudicial punishment is the same as that of trials by courts-martial —namely, violations of the Uniform Code of Military Justice.

The fact that, like codal provisions for trial by court-martial, Article 15 concerns "punishment" for crimes is also attested by the statutory right of most servicemembers to demand trial by court-martial and thereby to require either the dismissal of charges or their referral for trial by court-martial. Furthermore, with the exception of "correctional custody," the nonjudicial punishments are of the same type as those which could be adjudged by a court-martial—except that the commander of personnel "attached to or embarked in a vessel" may impose the punishment of confinement on bread and water. *See United States v. Wappler,* 2 U.S.C.M.A. 393, 9 C.M.R. 23 (1953).

The majority opinion's illusory distinction between nonjudicial punishment and punishment pursuant to a court-martial sentence suggests certain logical corollaries. For example, if nonjudicial punishment is not "punishment" but only is involved with "the maintenance of discipline," an accused who has been acquitted of a crime, or convicted and sentenced, could nonetheless be punished nonjudicially for the same offense. Under this theory, if Dobzynski had been acquitted of the drug offense, he could still have been nonjudicially punished for the same alleged misconduct, because that punishment would only be "disciplinary." Likewise, if convicted and sentenced by a court-martial, he would be subject to additional punishment under Article 15 if his commander thought this would help maintain discipline. Such results certainly were not intended by Congress—which in Article 15(a) referred to "trial by court-martial *in lieu of*" nonjudicial punishment—and undoubtedly they would shock the draftsmen of the Uniform Code.[10]

9. It has been my understanding that one purpose of the legal review of nonjudicial punishments by judge advocates, required in many situations under paragraph 135 of the 1969

Manual, *supra,* is to assure that the alleged misconduct violates the Code.

10. To impose nonjudicial punishment *after* a trial by court-martial also would seem to raise

It also follows from the distinction drawn in the majority opinion that a commander "may·be able to rely on the disciplinary system if the evidence is insufficient," 16 M.J. at 88, although the opinion acknowledges that "the effect is a perception of injustice in the eyes of the layman." *Id.* at 88. Not only the layman but also at least one judge of this Court perceives some injustice in a system where, after the evidence against an accused has been found insufficient, he may nonetheless be punished nonjudicially over his objection. Congress never contemplated that Article 15 would be used by commanders to impose "disciplinary punishments" on the basis of conjecture or speculation, when evidence of an accused's guilt is insufficient.[11]

## IV

The present case in no way involves the issue of whether our Court should become engaged in the routine review of nonjudicial punishments, which admittedly would be an overwhelming task for us. Instead, it only concerns the question of whether an accused's right to have a judicial hearing as to his guilt or innocence should be protected by our Court when that right clearly exists under the Code. The Government contends that correction boards under 10 U.S.C. § 1552 will be far more suitable forums for considering whether nonjudicial punishments are legal and whether they comply with codal requirements. Except in those instances in which the nonjudicial punishment impinges in some way upon the court-martial process, I might agree. However, under the circumstances of the present case, I am convinced that the petitioner need not await consideration of his claim at some future time by a correction board or by a non-codal judicial tribunal like the Claims Court. *Cf. Cochran v. United States, supra.*

Therefore, pursuant to our jurisdiction over the court-martial process—a process which in this case was initiated by Dobzynski's own commander—I would grant the petition for extraordinary relief and require that any punishment of Dobzynski for the offense at issue be imposed only pursuant to the sentence of a court-martial.

Fifth Amendment double-jeopardy and due-process problems.

11. If the accused has the right to demand trial by court-martial and fails to exercise it, he has no valid complaint about the sufficiency of the evidence, for he has not exercised his opportunity to test the evidence. However, according to remarks of the Assistant Judge Advocate General of the Army during the 1983 Homer Ferguson Conference on Appellate Advocacy, it is Army policy that a commander have evidence of guilt when he proposes nonjudicial punishment; and a commander is not supposed to "bluff" an accused into accepting an Article 15, when evidence of guilt is lacking. At captain's mast in the Navy, a type of hearing is afforded an accused, and I assume that most captains do not award punishment at mast unless they are satisfied of the accused's guilt by evidence which they believe to be reliable. Unfortunately, sometimes a different view is taken—as evidenced by the following excerpt from the testimony of a ship's captain in a case pending before our Court:

Q. Do you recall the substance of those conversations?

A. To the best of my memory, that was three and a half years ago, the trial counsel told—this is hearsay, I realize—told the XO and he told me that there were problems with having a court-martial, that we may have to take him to a captain's mast. Again, to the best of my memory, I told them that I preferred to have it as a court-martial. I didn't really want to take him to captain's mast, that would have to be a last-gasp effort.

*United States v. Davenport,* Dkt. No. 40318 (R. 32—limited hearing).