Robert L. JONES, U.S. Navy, Petitioner,

v.

COMMANDER, NAVAL AIR FORCE,
U.S. ATLANTIC FLEET

and

United States Navy, Respondents.

Misc. No. 84–10.

U.S. Court of Military Appeals.

July 16, 1984.

For Petitioner: *Major Michael E. Canode*, USMC (argued); *Lieutenant Wayne L. Ritter, Jr.*, JAGC, USNR (on brief); *Lieutenant Colonel M. W. Lucas*, USMC.

For Respondents: *Lieutenant Steven P. Benson*, JAGC, USNR (argued); *Commander W. J. Hughes*, JAGC, USN (on brief).

*Amici Curiae* on Behalf of Respondents: *Captain John F. Burnette, Major Joseph A. Rehyansky, Colonel James Kucera* (on brief)—For Appellate Government Division, U.S. Army.

*Captain Brenda Hollis, Colonel Kenneth R. Rengert* (on brief)—For Appellate Government Division, U.S. Air Force.

*Opinion*

FLETCHER Judge:

This petition, which calls upon us to exercise our powers of extraordinary relief, seeks a writ of mandamus directing the convening authority to reverse his disapproval of an appeal of nonjudicial punishment and directing the United States Navy to reinstate petitioner by annulling his administrative discharge. Under the facts as presented and argued before us, and in light of *Dobzynski v. Green*, 16 M.J. 84 (C.M.A. 1983), we hold that the wrong perpetuated here does not rise to the level of a legal error demanding the exercise of our extraordinary relief powers. Nevertheless, this case foreshadows unreasonable-abuse of command disciplinary powers which can-

not be tolerated in a fundamentally fair military justice system.

We turn briefly to the pertinent facts. Originally petitioner was tried at a general court-martial on various drug-related charges including conspiracy and dereliction of duty. After various successful suppression motions and withdrawal of the dereliction charge on the grounds of failure to state an offense, the court proceeded to hear the Government's case-in-chief. *Cf. Dobzynski v. Green, supra.* At the conclusion of this evidence a motion for a finding of not guilty was granted by the military judge.

However, subsequently, petitioner, "who was attached to or embarked in a vessel," * was administratively punished under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815, for two offenses: a modified charge and specification of dereliction of duty stating all legally necessary elements and a conspiracy charge and specification based on substantially the same evidence as the prior conspiracy charge but alleging a different co-conspirator. Subsequent to the Captain's mast, petitioner was processed for an administrative discharge under less than honorable conditions. Jones filed an appeal to imposition of nonjudicial punishment and waived his right to an administrative board. He was administratively discharged under less than honorable conditions. The Article 15 appeal was denied by the Commander, Naval Air Force, U.S. Atlantic Fleet.

▇▇▇ There is no doubt that had the conspiracy charge as alleged in the Article 15 charge and specification been referred to a court-martial, the Government would have been collaterally estopped from its prosecution. We conclude that its allegation of conspiracy amounted to essentially the same crime alleged in the general court-martial with mere substitution in the second instance of a previously unnamed conspirator. The Government argued before us that no constitutional restraints may be imposed on a commander in the exercise of his disciplinary powers. With-

out rendering an advisory opinion in this regard, we merely observe that authority under Article 15 implicitly is to be exercised by a commander imbued *with reasonableness and sensitivity to constitutional implications.* We would like to assume that this commander received inadequate constitutional advice from his counsel concerning this discipline. In any event, we do not conclude that this legal error rose to the level requiring extraordinary relief by this Court. *Dobzynski v. Green, supra.* Petitioner may well seek relief in the Article III Courts. The petition is dismissed.

COOK, Senior Judge (concurring in the result):

In my opinion, this petition for review of a nonjudicial punishment and an administrative discharge is a case in which we simply lack jurisdiction, rather than one in which we have it, but are unwilling to exercise it. Articles 67(b), 66(b), and 69, Uniform Code of Military Justice, 10 U.S.C. §§ 867(b), 866(b), and 869, respectively; *Dobzynski v. Green,* 16 M.J. 84 (C.M.A. 1983); *Stewart v. Stevens,* 5 M.J. 220 (C.M.A. 1978) (Cook, J., concurring). I am, of course, mindful of the unseemly manner in which this nonjudicial punishment arose. But I presume Congress was well aware of the possibility that, in some cases, nonjudicial punishment could be imposed on servicemembers based on evidence that would not have been admissible at a court-martial. This possibility exists because servicemembers who are "attached to or embarked in a vessel" are prohibited from demanding trial by court-martial, in lieu of nonjudicial punishment. Article 15, UCMJ, 10 U.S.C. § 815. Certainly there was no shortage of witnesses who testified, sometimes vehemently, against this "nonremoval" provision. Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Committee, 81st Cong., 1st Sess. [hereafter cited as House Hearings] 709–10, 734, 736, 753, 818–19, 824 (1949); Hearings on H.R. 4080 Before a Subcomm. of the Senate Armed Services Committee, 81st Cong., 1st

---

* *See* Article 15(a), Uniform Code of Military Justice, 10 U.S.C. § 815(a).

Sess. [hereafter cited as Senate Hearings] 91, 297—*reprinted in Index and Legislative History, Uniform Code of Military Justice.* However in the end, the arguments for this provision prevailed, based evidently upon the peculiar needs of the Navy. *See* House Hearings *supra* at pp. 924–25, 933–35, 940, 942; H.Rep. No. 491, 81st Cong., 1st Sess. 14–15 (1949), *reprinted in Index and Legislative History, supra.* Senate Hearings, *supra* at 35, 284; S.Rep. No. 486, 81st Cong., 1st Sess. 11 (1949), *reprinted in Index and Legislative History, supra.* The result was that review of these administrative actions was left entirely within command channels.

Admittedly, there is nothing in the legislative history which suggests that Congress anticipated the particular abuse of the nonremoval provision in the instant case, i.e., the imposition of nonjudicial punishment only after a court-martial had been successfully defended by a servicemember. Rather, it is quite clear that Congress was concerned about disruptions in discipline arising from demands for courts-martial at sea. In this case, a demand for a court-martial in lieu of nonjudicial punishment could hardly be disruptive to the Government, since the Government opted to proceed with a court-martial initially. And unless and until Congress or the Secretary of the Navy sees fit to restrict this particular stratagem, we may continue to see examples of this practice. *Cf. Dobzynski v. Green, supra.* Unfortunately, our charter to review only courts-martial—and not even all of those—remains unchanged, and we, as a court, are powerless to effect a remedy. Accordingly, I join in voting to dismiss the petition.

EVERETT, Chief Judge (dissenting):

In *Dobzynski v. Green,* 16 M.J. 84 (C.M.A. 1983), I dissented from the refusal of the majority to exercise this Court's supervisory jurisdiction to grant relief to a sailor who, in my view, had been victimized by misuse of nonjudicial punishment under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815. Because the present case involves an even more flagrant misuse of Article 15, I would, of course, grant extraordinary relief to petitioner Jones.

This more glaring abuse of nonjudicial punishment as an integral part of the military justice system under the Uniform Code of Military Justice is conspicuous when one considers the stages of the charges against Dobzynski and against petitioner at which Article 15 was invoked in each instance. The charges against Dobzynski were withdrawn from court-martial and disposed of under Article 15 after a motion to suppress had been granted but before trial on the merits had begun. Thus, he could not have pleaded double jeopardy or invoked collateral estoppel if later those same charges had been referred to another court-martial. *See* Art. 44, UCMJ, 10 U.S.C. § 844; U.S. Const. amend. V; *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). On the other hand, Jones has been *acquitted* by a general court-martial of the charges against him. Therefore, he is protected by the Uniform Code and the United States Constitution from being tried again for those offenses.

Nonetheless, during oral argument appellate government counsel forthrightly asserted that a servicemember may be nonjudicially punished for the same offenses for which he already has been tried by court-martial,[1] and that when he is "attached to or embarked in a vessel," as was petitioner, there is nothing he can do about it. *See* Art. 15(a). Moreover, the Government pointedly asserted that the Court is power-

---

**1.** At one point appellate government counsel claimed that the offenses for which Jones was nonjudicially punished differed from those of which he was acquitted. However, even a superficial comparison of the charges tried by the court-martial with the offenses for which petitioner was nonjudicially punished reveals that they are the same. At the very least, collateral estoppel—which also has a constitutional basis, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)—would have applied if Jones had again been court-martialled for the offenses which were the subject of nonjudicial punishment.

less to remedy this action, because nonjudicial punishment under Article 15, not a court-martial, is involved. In a consistent fashion, appellate government counsel also claimed, in response to questions from the Court, that judicial relief is unavailable within the military justice system even if (a) the nonjudicial punishment is based on a coerced confession obtained in violation of the fifth amendment or on evidence rendered inadmissible by statute, cf. 18 U.S.C. § 2518; (b) the nonjudicial punishment exceeds the maximum authorized by Article 15; or (c) the nonjudicial punishment is imposed in violation of specific statutory prohibitions against "flogging," "branding, marking, or tattooing on the body, or any other cruel or unusual punishment," Art. 55, UCMJ, 10 U.S.C. § 855; cf. U.S. Const. amend VIII.

The Government's claims of nonreviewable power are irreconcilable with this Court's observation in *McPhail v. United States*, 1 M.J. 457, 463 (C.M.A. 1976):

> Assuredly, there are limits to our authority, even as the highest court in the military justice system. *See Noyd v. Bond*, supra, 395 U.S. [683] at 695 n. 7, 89 S.Ct. 1876 [at 1883 n. 7, 23 L.Ed.2d 631]. *Whatever those limits are, as to matters reasonably comprehended within the provisions of the Uniform Code of Military Justice, we have jurisdiction to require compliance with applicable law from all courts and persons purporting to act under its authority. See Collier v. United States*, 19 U.S.C.M.A. 511, 42 C.M.R. 113 (1970); *Johnson v. United States* [19 U.S.C.M.A. 407, 42 C.M.R. 9 (1970)]. (Emphasis added.)

Likewise, those claims are inconsistent with our comment that

> Congress made us responsible for "the protection and preservation of the Constitutional rights of persons in the armed· forces," *United States v. Frischholz*, 16 U.S.C.M.A. 150, 152, 36 C.M.R. 306, 308 (1966), and "confer[red] upon" us "a general supervisory power over the administration of military justice." *Gale v.*

*United States*, 17 U.S.C.M.A. 40, 42, 37 C.M.R. 304, 306 (1967)."

*United States v. Matthews*, 16 M.J. 354, 367 (C.M.A. 1983). In light of these pronouncements, I have no doubt about this Court's power to grant extraordinary relief when Article 15 is used in a manner that clearly violates a servicemember's statutory and constitutional rights.

Senior Judge Cook purports to find in the hearings on the Uniform Code in 1949–50 evidence of legislative intent that this Court not be granted jurisdiction to give extraordinary relief in matters affecting nonjudicial punishment. In my view, the legislative history of the establishment of the Court of Military Appeals, as discussed in *United States v. Matthews, supra*, suggests a diametrically opposed conclusion. In any event, I feel confident that neither in the original hearings on the Code nor in the later 1962 hearings on expansion of Article 15 was there any intimation that nonjudicial punishment could be utilized by commanders as was done in *Dobzynski v. Green, supra*, and in the present case *without* extraordinary relief being available from our Court.

Actually, Senior Judge Cook's argument proves too much, because at the time of the hearings on the Uniform Code there probably was no reference whatsoever to the power of this Court to grant extraordinary relief. An obvious reason for this omission is that not until 1954—in the seminal case of *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)—did the Supreme Court reveal the potential scope of the All-Writs Act, 28 U.S.C. § 1651, in criminal cases. *See also United States v. Ferguson*, 5 U.S.C.M.A. 68, 86–7, 17 C.M.R. 68, 86–7 (1954) (Brosman, J.). Nonetheless, this Court has consistently utilized the All-Writs Act as a basis for granting extraordinary relief—even though such relief was never mentioned in the 1949–50 hearings; and this use has been approved by the Supreme Court. *Noyd v. Bond*, 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 1883 n. 7, 23 L.Ed.2d 631, 643 (1969). Indeed, both of my Brothers have not hesitated to grant

extraordinary relief in a variety of situations never mentioned in the legislative hearings on the Code.

I realize that the workload of our Court does not permit liberal use of our extraordinary relief powers—especially with respect to nonjudicial punishments. However, in the present case there are several reasons to exercise this power. For one thing, the action of the officer administering nonjudicial punishment defied the judgment of the general court-martial which had acquitted Jones. Generally, judgments of courts-martial are respected by military authorities; but when that does not occur, this Court should not hesitate to intervene by grant of extraordinary relief—just as I suppose we would if Jones had been in pretrial confinement but, after acquittal, was nonetheless kept in the brig.

Secondly, grant of extraordinary relief is appropriate in this case because there has been a "usurpation of power" by the commander who imposed nonjudicial punishment on Jones. "Usurpation of power" is a test we regularly have used in determining whether extraordinary relief was available in judicial proceedings. *Cf. United States v. DiBello,* 17 M.J. 77 (C.M.A. 1983); *Murray v. Haldeman,* 16 M.J. 74 (C.M.A. 1983). The test should work equally well in the present case.

Another reason to grant extraordinary relief to Jones is that, by acting now, we may halt once and for all the efforts to use nonjudicial punishment in a manner not intended by Congress, *see Dobzynski v. Green, supra* (Everett, C.J., dissenting), and calculated to deprive servicemembers of important statutory and constitutional rights. Indeed, petitioner's counsel pointed out during oral argument that, unless this Court acts, we may well see the employment of a new tactic designed to evade the constitutional rights of servicemembers. As counsel explained, if an accused is not already "attached to or embarked in a vessel" and so would have the right to demand trial by court-martial, a commander may attach him to a vessel for temporary duty (TAD). While thus temporarily attached, he may then be subjected to nonjudicial punishment; and he will not have the right to demand trial by court-martial—where defenses like double jeopardy are recognized. Thus, constitutional and statutory rights which would be available to a servicemember in a court-martial can be readily bypassed.

Judge Fletcher notes that "[p]etitioner may well seek relief in the Article III courts." [2] While I agree with his conclusion—and would anticipate that relief would be granted there—I certainly do not perceive any necessity to compel Jones to follow this circuitous, costly, and time-consuming route. Indeed, I detect a congressional intent exactly to the contrary. In explaining why the Military Justice Act of 1983 created certiorari jurisdiction in the Supreme Court to review decisions of this Court, both the House and Senate Armed Services Committees noted that, in the absence of such review, an accused could only reach the Supreme Court by an "attempt to mount a collateral attack at his own expense, a costly and difficult venture." *See* H.Rep. No. 549, 98th Cong., 1st Sess. 16 (1983); S.Rep. No. 53, 98th Cong., 1st Sess. 8 (1983). Just as Congress did not wish to require that an accused incur the cost of a collateral attack in a United States District Court or the U.S. Claims Court in order to obtain review by the Supreme Court, I believe that the legislative intent was that judicial relief be provided Jones and other similarly situated petitioners within the military justice system, rather than to require that they incur the cost and delay of collateral attack outside the system. Indeed, generally, I believe that Congress intended for this Court and the Courts of Military Review to grant servicemembers relief when their constitutional rights have been violated in connection with the administration of military justice—rather than to com-

---

**2.** The most obvious route for Jones to take is through the United States Claims Court—which is not an Article III court; but I assume that it is also included within Judge Fletcher's reference to "the Article III courts."

pel servicemembers to seek relief elsewhere. *Cf. United States v. Matthews, supra.* Of course, one benefit of my approach is that the cases will be decided by tribunals that have considerable experience with the subject matter—rather than in forums which may be unfamiliar with the issues and which are overloaded with other matters.

Finally, let me express my concern that, by refusing relief to petitioners like Jones, we are creating an equal-protection problem. For all practical purposes the servicemember "attached to or embarked in a vessel" becomes a "second class citizen" for some purposes of military justice. His only relief for even the most flagrant violations of his statutory and constitutional rights in nonjudicial punishment must come—if they come at all—at the end of a costly and time-consuming attack in Federal tribunals outside the military justice system. Other servicemembers, however, have a practical remedy: demand for trial by court-martial, where their rights are protected and judicial review is provided.

Certainly, the needs of the seagoing services require that special powers be granted to the captain of a vessel—even at a cost to uniformity in military justice. He must act swiftly and surely to punish offenses. With this in mind, Congress elimi-

nated the right to demand court-martial in lieu of nonjudicial punishment for persons "attached to or embarked in a vessel." However, to say that such servicemembers will obtain no judicial relief within the military justice system when a commander abuses his powers under Article 15 goes much further than is justified by the need to maintain discipline aboard ships.[3] If the Government is correct about the consequences that may be visited upon Jones and others who are "attached to or embarked in a vessel," then those consequences are too drastic to be justified by the dichotomy between servicemembers on a vessel and those who are not. Therefore, since the classification made by Article 15 does not rationally support the results which this Court now allows to flow from that classification, Jones and others "attached to or embarked in a vessel" are being deprived of their Fifth Amendment rights. *Cf. Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

Because I believe that we can and should remedy—and not merely criticize—the unjust and unconstitutional action taken against petitioner Jones under Article 15 of the Code, I would grant him extraordinary relief by directing that the nonjudicial punishment be set aside.[4]

---

**3.** Of course, as sometimes applied, the phrase "attached to or embarked in a vessel" goes far beyond persons actually at sea. A ship is a "vessel" for these purposes even though immobilized in a dry dock or never put to sea. The test seems to be whether, under some conceivable circumstance at some present or future time, the ship could sail.

**4.** Petitioner also asked that this Court grant relief with respect to his administrative discharge,

which he claims was predicated on the illegal nonjudicial punishment. Since the majority is unwilling to grant relief even as to the nonjudicial punishment, I have not attempted to consider whether administrative discharges—which generally fall outside the purview of the Uniform Code—may be the subject of extraordinary relief from this Court, if based solely on illegal nonjudicial punishments.