Jeffery L. DUKES, 263 89 5066, Ship's Serviceman, Seaman (E–3), U.S. Navy, Petitioner,

v.

R.E. SMITH, CDR, USN, Commanding Officer, USS WADDELL (DDG–24); Commander, Destroyer Squadron Thirty-Three; and the United States of America, Respondents.

NMCM No. 911631C.

U.S. Navy–Marine Corps Court of Military Review.

En Banc Reconsideration of Order 12 July 1991.

Decided 23 Dec. 1991.

Before WILLEVER, Chief Judge, MITCHELL, FREYER, STRICKLAND and JONES, Senior Judges, and ORR, HOLDER, REED, MOLLISON and LAWRENCE, JJ.

## PETITION AND BRIEF IN SUPPORT SEEKING EXTRAORDINARY RELIEF IN THE FORM OF A WRIT OF MANDAMUS

Petitioner submits a Petition and Brief in Support Seeking Extraordinary Relief in the Form of a Writ of Mandamus requesting that we direct the Respondent Commanding Officer, USS WADDELL (DDG 24), or Respondent Commander, Destroyer Squadron THIRTY–THREE, to set aside the Petitioner's nonjudicial punishment imposed pursuant to Article 15, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 815, by Respondent Commanding Officer, USS WADDELL (DDG 24), and to restore to him all rights and property taken as a result thereof. Because this petition presents a question of exceptional importance to the military services, a majority of the judges of the Court voted to reconsider *en banc* the Court's previous order of 12 July 1991 that had the same result as herein but gave only a brief rationale for the result. We hereby grant Petitioner's Motion to Attach Documents.

At the time that nonjudicial punishment was imposed, Petitioner was a crewmember of USS WADDELL, a destroyer of the active Navy, then located in port in San Diego. Although it is unimportant to our decision is this case, it is apparent from the attached documents that USS WADDELL was not in drydock or in the yards when punishment was imposed, rather she was fully capable of putting to sea and performing her mission within a normal timeframe for Navy combatants. Prior to being punished at captain's mast, Petitioner claimed a right to demand trial by court-martial in lieu of proceedings conducted pursuant to Article 15 on the ground that servicemembers attached to a vessel that is in port may refuse nonjudicial punishment. Punishment was imposed upon him for the use of cocaine. He appealed the punishment to Commander, Destroyer Squadron THIRTY–THREE, who denied the appeal. Petitioner's request to set aside the nonjudicial punishment and restore his lost rights and privileges is based on his contention that a member of a Navy ship's crew has a right to refuse nonjudicial punishment when the ship is in a domestic port.

Before we may consider the merits of the petition, Petitioner must establish that this Court has jurisdiction to consider his petition and act upon it. He attempts to do so by invoking this Court's purported "supervisory power over the naval justice system," citing in support of this power *Unger v. Ziemniak*, 27 M.J. 349 (C.M.A. 1989), and the All Writs Act, 28 U.S.C. § 1651(a). We conclude that Petitioner has not established jurisdiction in this Court over his petition, and therefore the petition is dismissed without consideration of its merits.

It is axiomatic that the Uniform Code of Military Justice contains no article or provision that requires, specifically permits, or even suggests any jurisdiction in the courts of military review to review by extraordinary writ any punishment imposed pursuant to Article 15. *See* Article 15(e), UCMJ, 10 U.S.C. § 815(e). It does, however, contain a specific provision governing appeals from nonjudicial punishment. Article 15(e), UCMJ.

Petitioner invokes the authority of the All Writs Act and therefore has "the burden of showing that [his] right to issuance of the writ is 'clear and indisputable.'" *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967) (citing *Bankers Life and Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148,

98 L.Ed. 106 (1953)). The All Writs Act neither creates nor confers jurisdiction; its power "is strictly of an auxiliary nature, in aid of a jurisdiction granted in some other provision of law...." *In re Josephson*, 218 F.2d 174, 180 (1st Cir.1954). To invoke the Act as a basis for issuance of this writ, Petitioner must establish an existing or potential *statutory* appellate jurisdiction in this Court over his nonjudicial punishment. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *Josephson* at 180. Unlike courts-martial in which military appellate courts have a potential appellate jurisdiction, military appellate courts do not possess even a potential review of any punishment imposed pursuant to Article 15. Indeed, the UCMJ specifically provides for a limited statutory appeal from nonjudicial punishment, and it is that statutory authority, not the All Writs Act, that controls. *Cf. Pennsylvania Bureau of Prisons v. U.S. Marshals*, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985) (writ of mandamus under All Writs Act unavailable because federal habeas corpus statute addresses particular issue). Accordingly, since the U.S. Court of Military Appeals and the courts of military review exercise no original jurisdiction, *In re Taylor*, 12 U.S.C.M.A. 427, 430, 31 C.M.R. 13, 16 (1961), and the UCMJ confers no appellate jurisdiction in them over the subject of this petition, the All Writs Act provides no separate basis for acting on the petition.

In dicta from time to time, individual judges of the Court of Military Appeals have suggested a general supervisory power that we, too, may exercise over any action relating to the UCMJ, akin to the judicial authority exercised by the U.S. Supreme Court over inferior federal courts pursuant to Article III of the U.S. Constitution. Whether this authority derives from the Court of Military Appeals' inherent authority as a court or from congressional intent is unclear. We note, however, that the inherent judicial power in the Supreme Court apparently derives from its grant of the "whole judicial power" of the United States, *see* U.S. Const. art. III; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173, 2

L.Ed. 60 (1803), and this inherent power is the likely basis for its implied supervisory authority over the proceedings of inferior federal courts even absent a statutory basis. The Supreme Court has exercised its authority to supervise the inferior federal courts in cases that were subject to federal appellate jurisdiction or to preserve the integrity of a ruling in such a case. The supervisory authority in the federal courts "merely permits the federal courts to supervise 'the administration of criminal justice' among the parties *before the bar."* *United States v. Payner*, 447 U.S. 727, 734 n. 7, 100 S.Ct. 2439, 2446 n. 7, 65 L.Ed.2d 468 (emphasis added) (citing *McNabb v. United States*, 318 U.S. 332, 345, 63 S.Ct. 608, 615, 87 L.Ed. 819 (1943)). We find no case in which the Supreme Court has exercised or attempted to exercise its supervisory authority as a basis for jurisdiction over a federal nonjudicial proceeding, and the authority has not been extended beyond the administration of justice in the federal courts to judicial proceedings in state courts. In short, the supervisory authority of the Supreme Court provides no basis, by analogy or otherwise, for our exercise of a general supervisory authority over military justice in the Naval Service to the degree that we may entertain an extraordinary writ from a nonjudicial proceeding that has not been and will not be a case before us upon statutory review.

 When a statutory provision is unambiguous, further judicial interpretation is unnecessary except in rare and exceptional circumstances. *United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). An appellate court is bound to assume that the legislative purpose of a statute is accurately expressed in the language of the statute. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). Unless an appellate court can discover a clearly expressed legislative intent to the contrary, the language of the statute is ordinarily regarded as conclusive. *Id.; United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The UCMJ clearly and unam-

biguously limits appeals from Article 15 proceedings to the next superior authority of the officer who imposed the punishment, and Article 66, UCMJ, 10 U.S.C. § 866, contains no provision for any review of Article 15 proceedings. Even if reference to legislative history and intent is made, that legislative history contains no clear expression of legislative intent regarding the military appellate courts' supervisory authority over the UCMJ that is contrary to the plain and unambiguous language of the UCMJ. Had Congress intended any review by the military appellate courts of Article 15 proceedings, the logical time for expressing that intention was in 1962 when Article 15 was amended to increase permissible punishments. To the contrary, in 1962 Congress clearly expressed its understanding regarding nonjudicial punishment that "since the punishment is nonjudicial, it is not considered a conviction of a crime and in this sense has no connection with the military court-martial system." S.Rep. No. 1911, 87th Cong., 2nd Sess. 2, *reprinted in* 1962 U.S.Code Cong. & Admin.News 2379, 2380.

In 1989, Congress considered appellate review of courts-martial not meeting the requirements of Article 66 and effected a significant change to Article 69 in the National Defense Authorization Act for Fiscal Years 1990 and 1991. The legislative history to the 1969 amendments to Article 69, UCMJ, 10 U.S.C. § 869, and the changes themselves, *see* S.Rep. No. 1601, 90th Cong., 2nd Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 4501, 4515–16; *Stewart v. Stevens*, 5 M.J. 220, 221–22 (C.M.A.1978) (Cook, J., concurring), reveal no clear congressional intent to approve of or expand military appellate jurisdiction over courts-martial that do not meet the requirements of Article 66, rather the history and the changes reveal an intent to provide to the Judge Advocates General exclusive review authority in such cases. Even in the face of *Jones v. Commander, Naval Air Force, U.S. Atlantic Fleet*, 18 M.J. 198 (C.M.A.1984), and *Dobzynski v. Green*, 16 M.J. 84 (C.M.A.1983), Congress declined to confer upon the military appellate courts any expanded jurisdiction to

review nonjudicial punishment proceedings. The legislative history to the Act reflects congressional concern with previous extensions of jurisdiction by military appellate courts based on the All Writs Act over courts-martial not subject to Article 66 review, as exemplified in cases such as *Unger* and *McPhail v. United States*, 1 M.J. 457 (C.M.A.1976). *See* S.Rep. No. 81, 101st Cong., 1st Sess. 172–73 (1989); *cf.* H.Rep. No. 121, 101st Cong., 1st Sess. 658, *reprinted in* 1989 U.S.Code Cong. & Admin.News 838, 1115. Thus, even were it appropriate to consider legislative intent to justify a broad supervisory authority in the military appellate courts to entertain an extraordinary writ from a nonjudicial punishment proceeding, the legislative history of the Code reveals no clear congressional intent to confer this unique authority.

Petitioner's reliance on *Unger* is misplaced. That case concerned review of a court-martial action, not punishment imposed in a nonjudicial proceeding. Significantly, Congress acted subsequent to *Unger* to amend Article 69, not Article 66, to provide a statutory basis for review of cases that otherwise do not meet the requirements of Article 66. For similar reasons, *McPhail* lends no support for jurisdiction over this petition. Additionally, both *Unger* and *McPhail* relied on *United States v. Frischolz*, 16 U.S.C.M.A. 150, 36 C.M.R. 306 (1966); *Gale v. United States*, 17 U.S.C.M.A. 40, 37 C.M.R. 304 (1967); and *United States v. Bevilacqua*, 18 U.S.C.M.A. 10, 39 C.M.R. 10 (1968). With these three cases as precedent, however, the Court of Military Appeals nonetheless dismissed a petition for extraordinary relief in the nature of a writ of habeas corpus concerning the limits of restraint imposed pursuant to Article 15 because "such punishment is not reviewable by this Court under the provisions of Article 67(b)...." *Whalen v. Stokes*, 19 U.S.C.M.A. 636 (1970). In both *Jones* and *Dobzynski*, a majority of the Court of Military Appeals declined to accept jurisdiction over the requested petition for extraordinary relief involving Article 15 proceedings. Neither case, therefore, provides precedential sup-

port for any exercise of jurisdiction over nonjudicial punishment: expansive language concerning jurisdiction by Judge Fletcher in both cases is no more than dicta. Additionally, both Article 15 proceedings were preceded by court-martial actions concerning the same offenses, a fact seemingly important to Chief Judge Everett who argued that jurisdiction existed. *Dobzynski* at 90 (Everett, C.J., dissenting). In summary, we find no support in existing decisional law for jurisdiction over nonjudicial punishment proceedings or their consequences.

In spite of these occasional suggestions of an extraordinary supervisory authority in the military appellate courts over all aspects of the military justice system, we find no precedent that expressly permits our exercise of jurisdiction over this petition, and we decline to exceed our statutory authority. Were we to accept a general supervisory authority to redress any contended wrong under the UCMJ through extraordinary writ, this court might logically become a forum to dispute: a delivery of a servicemember to civil authorities pursuant to Article 14, UCMJ, 10 U.S.C. § 814; the conditions of confinement or standards of discipline of military members confined pursuant to Article 58, UCMJ, 10 U.S.C. § 858; administrative action pursuant to Article 75, UCMJ, 10 U.S.C. § 875; an appellate leave action taken pursuant to Article 76a, UCMJ, 10 U.S.C. § 876a; the conduct or results of a court of inquiry pursuant to Article 135, UCMJ, 10 U.S.C. § 935; the merits of a complaint of wrong made pursuant to Article 138, UCMJ, 10 U.S.C. § 938; or, even a claim of damage to property pursuant to Article 139, UCMJ, 10 U.S.C. § 939. *See McPhail* at 463. We cannot and will not arrogate to ourselves an authority that clearly is beyond that granted by statute or contemplated by Congress.

Appellant's stated issue suggests a distinction between petitions for relief from nonjudicial punishment based on the conduct or details of the proceeding vice the authority of the officer to conduct the pro-

ceeding, in that the latter pertains solely to an basic interpretation of a Codal provision. We reject this distinction. Congress clearly determined that the merits and wisdom of imposing nonjudicial punishment in an individual case are the exclusive province of Naval commanders. Were we to create an area of permissible appellate litigation by petition concerning the exercise of jurisdiction pursuant to Article 15, we would open the door to dilatory and time-consuming appellate litigation that would frustrate the very reason for the Naval exception to the rule that nonjudicial punishment proceedings may be refused. Appellate rights require procedures to effect those rights, and even minimal procedures in this context would allow for some kind of avenue to challenge the very exercise of Article 15 authority. Any challenge in this regard would diminish the informality, expeditiousness, and finality of this long-standing procedure and would seriously degrade operational commanders' ability to maintain good order and discipline within their afloat commands. This unfortunate result would seriously degrade commanders' ability to meet their missions and, therefore, would directly affect our national defense.

MITCHELL, Senior Judge, concurs.*