**UNITED STATES**

v.

**Eric D. WIGGINS, 135 74 9495
Private First Class (E–2),
U.S. Marine Corps.**

**NMCM 91 1343.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 30 Nov. 1990.

Decided 10 June 1992.

LT James R. Crisfield, Jr., JAGC, USNR, Appellate Defense Counsel.

Maj Frank F. Krider, USMCR, Appellate Government Counsel.

LT R. Byrd, JAGC, USNR, Appellate Government Counsel.

Before JONES, Senior Judge, and REED and LAWRENCE, JJ.

JONES, Senior Judge:

The issue presented for our resolution is as follows:

> ABSENT A FACTUAL BASIS ESTABLISHING THAT APPELLANT WAS FOUND SLEEPING ON POST, WERE HIS PLEAS OF GUILTY TO CHARGE III AND ITS SPECIFICATION PROPERLY ACCEPTED BY THE MILITARY JUDGE?[1]

---

**2.** The gravamen of the offense was also not breaking restriction in violation of Article 134.

**1.** Upon initial submission of this case, the Court specified the issue and directed the detailing of appellate counsel to represent both appellant and the Government. In consonance with his

The Court specified this issue based upon the following exchange during the providence inquiry:

MJ: Now, at 0345 on 11 October 1990, were you found sleeping on post?

ACC: Sir, what happened exactly with the fire watch, at 0345 this PFC [appellant] was supposed to wake the next fire watch up. This PFC [appellant] took a seat on two foot lockers and nodded off and woke up, sir, I believe around 0400 that morning and woke up the next fire watch up [sic] and his post was short and the next fire watch wondered why and this PFC [appellant] told him that I was sleeping and he told the staff sergeant and things were dealt with then, sir.

MJ: So no one actually found you sleeping on post, but you admit that you were sleeping on post?

ACC: Yes, sir.

Record at 47.

Appellant related that he was properly posted as the building fire watch, charged with the security of the barracks. He understood that he was to remain awake, walk his post, and provide security for persons and property within the barracks. Nevertheless, he admitted to the military judge that he had fallen asleep within the limits of that post. Based on the apparent factual scenario, however, appellant had not been found asleep by another.

Recognizing this anomaly, the military judge returned later in his providence inquiry to question the accused further:

MJ: I want to go back just for a second to the specification under Charge III. Now that specification deals with being found asleep on your post. Now, essentially you were sleeping on post at 0345, is that correct?

ACC: Yes, sir.

MJ: And no one specifically found you sleeping on post, is that correct?

ACC: Yes, sir.

MJ: Essentially, you found yourself sleeping on post?

ACC: Yes, sir.

MJ: So at 0345 on 11 October 1990 you were in fact found sleeping on post by yourself, is that correct?

ACC: Yes, sir.

MJ: And you knew that conduct was wrong?

ACC: Yes, sir.

Record at 53.

Article 113, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 913, states in pertinent part:

Any sentinel or look-out who is found drunk or sleeping upon his post, or leaves it before he is regularly relieved, shall be punished, if the offense is committed in time of war, by death or such other punishment as a court-martial may direct, but if the offense is committed at any other time, by such punishment other than death as a court-martial may direct.

Manual for Courts–Martial (MCM), United States, 1984, Part IV, para. 38, lists the elements of the offense as (1) that the accused was posted or on post as a sentinel or lookout; and (2) that the accused was found drunk while on post, was found sleeping while on post, or left post before being regularly relieved.

Counsel have diligently searched the case law and legislative history of the Code concerning the meaning and significance of the word "found," but without success. Our research has revealed a similar paucity of authority. We do know that the present language of Article 113 is substantially the same as that in Article of War 86, except for the addition of the word "look-out" to accommodate Navy terminology. Index and Legislative History, Uniform Code of Military Justice, Commentary to Art. 113 at

pleas, appellant was found guilty at a special court-martial of four instances of failure to go or going from his appointed place of duty, disrespect to a staff noncommissioned officer, sleeping on post, and larceny of $250.00 from a fellow Marine, in violation of Articles 86, 91, 113, and 121, Uniform Code of Military Justice,

10 USC §§ 886, 891, 913 and 921, respectively. The convening authority approved appellant's sentence of confinement for 4 months, forfeiture of $250.00 pay per month for 4 months, reduction to pay grade E–1, and a bad-conduct discharge.

1231 (1950). In the course of our search, we have encountered Colonel Winthrop's discussion of the term "found on" as it related to being "found drunk on" duty within the meaning of Article of War 38, the predecessor to our current Article 112, UCMJ, 10 U.S.C. § 912:

> From the use of these words it is to be implied that the drunkenness of the offender must exhibit itself after he has entered upon, and while he is on, the duty. The Article does not require that the accused shall have become drunk, but that he shall have been found, *i.e. discovered or perceived*, to be drunk, when on the duty, and it does not therefore necessarily follow that his drunkenness shall have commenced after the duty has been entered upon.... [T]he fact that he was already intoxicated cannot render the party himself any the less legally liable under the Article, if, after having entered upon the duty, his intoxication continues and his condition is *detected* (emphasis added) (footnotes omitted).

William Winthrop, *Military Law and Precedents* 611–612 (2d ed. 1920 Reprint).

Brigadier General James Snedeker is the only commentator we have found that has written on the precise issue:

> Not only must his presence upon his post concur in point in time with his sleeping, but also he must be found at the time of the required concurrence. The express language of the Code requires that the sentinel be found under the circumstances described, and it is not enough that the mere fact of sleeping occur upon his post. *See* MCM Para. 192. *Contra:* 15 ETO 134 (remainder of footnote deleted). This offense, punishable with death, cannot be allowed to rest upon evidence lacking the testimony of even one witness to the overt act, and traditionally it never has. Samuel, *The Law Military* 557 (London, 1816).

James Snedeker, *Military Justice Under the Uniform Code* 632 (1953).

Although we have reviewed General Snedeker's source, we are unable to reach his

interpretation; moreover, the single case cited for his proposition is the contrary holding of *United States v. Davis*, 15 B.R. (ETO)[2] 129 (1945). There the prosecution's proof relevant to the accused's sleeping consisted of the circumstantial evidence that he had failed to challenge the officer of the day or respond to that officer's pounding on the door; that upon being first observed, he had been just arising from a "lying down" position, with red and drowsy eyes, and unable to speak coherently; and that he had left his rifle standing against the wall. Additionally, the accused's pre-trial statement denying that he was asleep when "found," but admitting that he had told the officer of the day that he had been asleep before the officer arrived, was admitted into evidence. In their findings, the court members excepted the word "found," apparently because no one actually saw (or found) the accused sleeping. The Board of Review concluded that no harm, i.e. error to the prejudice of the accused, had been done. In the words of the Board,

> While the expression "found sleeping upon his post" is used in both Article of War 86 and in the form of specification thereunder provided in Appendix 4 of the Manual for Courts–Martial, it is plain that the offense denounced by the Article of War is the act of sleeping on post rather than apprehension in the act, and the exception of the word "found" from the Specification is therefore immaterial.

*Davis*, 15 B.R. ETO at 134.

Somewhat later, the Court of Military Appeals, in addressing the sufficiency of the evidence in such a case, broke the question down into two parts: First, is the evidence sufficient to prove beyond a reasonable doubt that the accused was sleeping while on duty? Second, is it qualitatively and quantitatively sufficient to show he was duly posted as a sentinel? No reference is made to proof of the *finding* of a sentinel in a sleeping state. *United States v. Burke*, 5 U.S.C.M.A. 56, 17 C.M.R. 56, 58 (1954). *See also United States v. McCauley*, 9 U.S.C.M.A. 65, 67,

---

2. European Theater of Operations.

25 C.M.R. 327, 329 (1958) (Latimer, J., dissenting) (basically, there are three facts which the Government has to prove beyond a reasonable doubt, namely, that the accused had been duly posted; that he was on post; and that he was asleep.)

Appellant contends that because the language of the statute is plain and unambiguous, we are bound to look no further than its plain language in construing it. In essence, appellant would have us conclude that the word "found" is a required element of the offense that must be given effect. We are, however, unwilling to subscribe to that view. As Government counsel has observed, were we to give literal effect to the word "found," such that appellant's conduct would not be criminal unless he were discovered sleeping on post by another, the criminality of the appellant's conduct would be governed, not by his conduct, but rather by the manner in which military authorities learned of that conduct.[3]

The historical purpose underlying the present Article 113 is clear. In discussing the raison d'etre for its progenitor, Article 39 of the Articles of War, Colonel Winthrop wrote plainly:

> OBJECT OF THE ARTICLE. The purpose of this provision, (which may be traced to Art. 32 of the Code of James II, as derived from Art. 50 of Gustavus Adolphus) is to secure on the part of sentinels that alert watchfulness and steadfastness which are the very essence of their service.

Winthrop, *supra* at 616. The Court of Military Appeals in *United States v. Williams*, 4 U.S.C.M.A. 69, 74, 15 C.M.R. 69, 74 (1954), made a similar observation: "In framing Article 113, the draftsmen of the Code were, in our view, seeking to assure—through the imposition of penal sanctions—the alert and rational performance of duty as a sentinel."

We believe the manner in which the lack of watchfulness and steadfastness is discovered is relevant only to the method of proof. Winthrop explains that the offense *should most properly be proved* by the testimony of the officer of the day, or officer or non-commissioned officer of the guard, (or by some member or members of the guard or patrol then present) by whom he was discovered in that condition. Winthrop, *supra* at 616. As observed in *United States v. Muldrow*, 48 C.M.R. 63, 64 (A.F.C.M.R.1973), the condition of being asleep, absent an admission by the accused, is *ordinarily proven* by circumstantial evidence based on the observations of the individual coming upon a sentinel in apparent sleep.

Accordingly, we conclude that the manner in which a sentinel is discovered sleeping on post is not an element of Article 113, UCMJ;[4] consequently, the pleas of guilty to the offense of sleeping on post were properly accepted by the military judge.

---

**3.** If it were so, a sentinel could sleep on his post, brag about it to his friends the following day, and escape prosecution, even though sufficient corroboration for his admission were subsequently developed, *e.g.* the discovery that he had been captured on the videotape of a fortuitously positioned security camera. Notwithstanding the dissent's embrace of what it claims is the plain meaning of the statute, we adhere to the basic formulation espoused by Lord Coke in *Heydon's Case,* 76 Eng.Rep. 637 (1584): "[T]he office of all the judges is always to make such construction as shall suppress the mischief, advance the remedy, and to suppress subtle invention and evasions for continuance of the mischief....";  as cited in 2A Norman J. Singer, *Sutherland's Statutory Construction* § 45.05 (5th ed. 1992). We further observe that the first meaning ascribed to the word "find" within Webster's Third New International Dictionary 851 (unabridged 1991) and apparently, histori-cally the one known to have been used in the English language first (see Explanatory Note 12.5) is "to come upon accidentally." Nowhere in our research have we come across any interpretation of Article 113 that requires the "plain meaning" that the finding must have been by happenstance; a suspicious superior can certainly plan to catch one he believes to be asleep on post.

**4.** As the dissent observes, any fear that an accused might plead guilty to an offense referred as capital is obviated by Article 45(b), UCMJ, 10 U.S.C. 845. Further, any concern that an accused might be convicted, contrary to his pleas, based on his admission or confession alone is precluded by the corroboration requirement of Military Rule of Evidence 304(g). *See United States v. Maio,* 34 M.J. 215 (C.M.A.1992).

The findings of guilty and the sentence as approved on review below are affirmed.

Judge REED concurs.

LAWRENCE, Judge (dissenting):

The resolution of the specified issue involves no more than application of accepted rules of statutory construction to the language of Article 113. This Court has made clear that:

> When a statutory provision is unambiguous, further judicial interpretation is unnecessary except in rare and exceptional circumstances. An appellate court is bound to assume that the legislative purpose of a statute is accurately expressed in the language of the statute. Unless an appellate court can discover a clearly expressed legislative intent to the contrary, the language of the statute is ordinarily regarded as conclusive.

*Dukes v. Smith*, 34 M.J. 803 (N.M.C.M.R. 1991) (citations omitted). *See Moskal v. United States*, 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); *United States v. Graham*, 16 M.J. 460 (C.M.A.1983); *United States v. Ware*, 1 M.J. 282 (C.M.A.1976). Article 113 is patently clear in requiring more than mere sleeping on post to support a conviction—it requires that the accused be "found" sleeping on post.

The term "to be found" is the passive of the infinitive of the verb "find" which, as any dictionary will reveal, means to come upon, perceive, or discover. This definition accords with the explanation by Colonel Winthrop of the offense of drunk on duty under Article of War 38, the precursor of Article 112, mentioned in the majority opinion. The express terms of the statute, therefore, require that someone come upon or otherwise discover a sentinel when he is sleeping, or that the sentinel be perceived sleeping by some means, before he may be convicted under the Article. This is conclusive and concludes the interpretation of the Article unless this Court can discover a clearly expressed legislative intent to the contrary. The majority's conclusion that there exists "no case law [or] legislative history of the Code concerning the meaning and significance of the word 'found' " is tantamount to a concession that no legislative intent contrary to the language of the statute exists, consequently, this Court must give legal effect to the express language of the statute.

The Government contends that "the word 'found' is simply a reference to the typical means by which the sleeping on post is discovered by military authorities." GOVERNMENT REPLY TO ISSUE SPECIFIED at 3. Penal statutes in general, and the Code in particular, do not commonly include language pertaining to methods of proof. If the word "found" does relate to a method of proof, that method would appear to be mandatory since it is not preceded by a modifier such as "ordinarily." This argument is unpersuasive to me.

Next the Government argues that a literal interpretation of a statute may be avoided if such an interpretation would lead to an absurd result. *Id.* at 4. If there is any reasonable basis for the requirement that a sentinel be found sleeping, the requirement is not absurd. The offense of sleeping on post has always been considered an extremely serious offense, so much so that it was and still is, in wartime, a capital offense. Recognizing that a person who is fatigued from combat or has been without sleep for a significant time is not readily aware of a momentary lapse into sleep and often cannot honestly judge his own level of consciousness, it is not unreasonable to require that another person have observed the alleged sleep in order to describe his observations to the court to prove to the fact-finder beyond a reasonable doubt that the accused was sleeping. Additionally, in most cases the most persuasive evidence that a sentinel was sleeping may be the fact that a person could approach the sentinel and observe his condition without challenge or notice by the sentinel. Article of War 86, the progenitor of Article 113, was drafted with wartime service in mind. An accused could not plead guilty then or now to a capital offense. The language of the two articles may reflect the reasonable view that a servicemember should not be

executed for sleeping on post unless a witness can testify from his own observations and perception gained at the time of the alleged sleeping as to the facts and circumstances surrounding the incident. I conclude that the language of the Article may stem from conscious choice and does not lead to an absurd result. If Congress is displeased with the efficacy of any Codal provision resulting from this Court's interpretation of clear Codal language, the remedy is an amendment of the Code.

In this case, appellant made clear during the providence inquiry that no one found him sleeping on post. This response is inconsistent with his pleas of guilty, consequently, I would set aside and dismiss Charge III and its specification. Upon reassessment of the sentence in accordance with *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990) and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), I would affirm the sentence approved on review below, reducing forfeitures to $200.00 pay per month for 2 months.